## TULARE IRRIGATION DISTRICT v. SHEPARD.

ERROR TO THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF CALIFORNIA.

No. 508. Submitted January 13, 1902.—Decided March 24, 1902.

The Tulare irrigation district, in California, issued and sold its bonds for the purpose of constructing its irrigation works. The proceeds were used for that purpose by the corporation, and the works were by means thereof constructed. The corporation then refused to pay the bonds, and denied its liability on them upon the ground that it was never legally organized as a corporation, and hence had no legal right to issue any bonds. *Held*, on the authority of *Douglas County Commissioners* v. *Bolles*, 94 U. S. 104, that common honesty demanded that a debt thus incurred should be paid; and that there was nothing in the facts in this case to set aside the application of that principle; that if anything could constitute a *de facto* corporation the defendant is one and that, being thus a *de facto* corporation, none but the State can question its existence.

Under the circumstances stated in the opinion of the court, the landowner is estopped from setting up the defence of the want of notice, as against the plaintiff in this case.

THIS was a writ of error to the Circuit Court of the United States for the Southern District of California, sued out for the purpose of reviewing a judgment of that court in favor of the defendant in error in an action brought by him against the irrigation district only, to recover interest due on certain coupons

attached to bonds issued by the district for the purpose of raising money to build its irrigation works. It appeared from the complaint that the plaintiff was a resident of Michigan, and that the Tulare irrigation district had at all times since September 2, 1889, been a corporation duly incorporated under the laws of the State of California, and since that time had been acting as such corporation; that under the laws of such State the irrigation district duly issued its bonds for the amount of $500,000 with coupons attached; that the plaintiff was a *bona fide* purchaser and holder of certain of those coupons, and that he had paid full value for the same, in the usual course of business and before any of them were due or dishonored, and in good faith and without any notice of any defect or invalidity of the same or any of them. Judgment for $13,185 and interest was demanded. The defendant demurred to the complaint, the demurrer was overruled, 94 Fed. Rep. 1, and the defendant then answered.

The answer, among other things, set up various alleged irregularities and omissions which occurred in the attempted formation of the irrigation district, on account of which, as contended, the corporation never was legally formed and never had power to issue bonds, and whatever bonds may have been issued were for those reasons void. The individual defendants at this stage applied to the court for an order permitting them to intervene in the action as parties therein, and to unite with the defendant corporation in resisting the claims of the plaintiff in this action. The court thereupon ordered that the petitioners' complaint in intervention should be filed without prejudice to the plaintiff's motion to strike out the same. They then filed what they termed their complaint in intervention in this action, (which is nothing more than an answer to the complaint,) in which they set up that the defendant Kelly was a citizen of the United States and a resident of the State of Massachusetts, and that ever since January 1, 1889, he had been and was at the time of the commencement of the suit the owner of the land which he described, and which was situate within the boundaries of the county of Tulare, California, and within the boundaries of the alleged Tulare irrigation district; that Jauchius, the other de-

fendant, was a citizen of the United States and a resident of the State of California, and that he, ever since January 1, 1889, had been the owner of certain other described real property also situate in the district, and they alleged that they were interested in the subject-matter of the action and in the success of the defendant; that if the bonds and coupons mentioned in the plaintiff's complaint were adjudged valid claims against the district, then the property of intervenors in the district would be assessed and taxes levied thereon to pay the claim of the plaintiff. They then set up substantially the same defences that were pleaded by the irrigation district in its answer. Also that to permit the collection of the bonds would take defendants' property without due process of law and in violation of the Federal Constitution.

The chief defect as set up in both pleadings and specially argued here was in regard to the organization of the district, the defect being an alleged insufficiency of the notice of the intended presentation of the petition to the board of supervisors, by reason of which, as averred, no legal notice was given, and, therefore, all subsequent proceedings were void and of no effect. Subsequently to the service of the answer Jauchius died, and his executor was made a party in his place.

The case came to trial upon a stipulation to waive a jury, was submitted upon an agreed statement of facts, and thereafter the court made its general findings in favor of the plaintiff, assessed his damages at the sum of $13,185, and ordered judgment against the irrigation district for that sum.

It was stipulated that any of the facts contained in the statement might be offered in evidence by any party to the action, and when so offered the party not offering the same might object to such facts or any of them upon legal grounds which might exist against their admissibility. The statement of facts contained twenty-one paragraphs. The first twelve were offered in evidence on the part of the plaintiff and received by the court under the defendant's objection and exception. The facts thus admitted showed that under the provisions of the irrigation act of the State of California, approved March 7, 1887, an effort was made in the county of Tulare to form an irrigation district

to be known as "Tulare irrigation district," and such proceedings were had in that behalf that what purported to be a certified copy of an order of the board of supervisors of that county was duly filed with the county recorder on September 14, 1889; that order recited that the board of supervisors of Tulare County, State of California, met as a board of canvassers on Monday, September 2, 1889, for the purpose of determining the result of the special election held in Tulare County on August 24, 1889, to vote upon the subject of the organization of the Tulare irrigation district and officers therefor, by which it appeared that there were 484 votes cast in favor of forming the district and 7 against it. The order then continued as follows: "And we further declare the territory embraced in the following described limits, to wit: (describing territory) an irrigation district duly organized under the name and style of 'Tulare irrigation district,' being situate in the county of Tulare, State of California." This declaration was made in accordance with section 3 of the act to form irrigation districts. The order further declared the election of the directors in the various divisions of the district.

The material sections of the act under which the attempt to form the district was made are to be found set forth in the case of *Fallbrook Irrigation District* v. *Bradley*, 164 U. S. 112, 116.

The persons declared by the order of the board of supervisors to have been elected as officers of the district immediately thereafter assumed to organize as such officers, and thereupon entered upon their duties the same as though said district had been legally organized and as though they had been legally elected as such officers, and they and their successors in office have ever since continued to act as such officers and to maintain the name of "Tulare irrigation district," and in its name have caused the defendant to act as though it was in every respect legally organized as an irrigation district under the act of the legislature, and in that behalf it has at all such times had the name "Tulare irrigation district" printed upon a sign above a door in front of an office in which the archives and papers of said defendant are kept; and its board of directors have met from time to time in such room from the time of such purported organization thereof until the present, weekly and sometimes oftener, averag-

ing twice a month.   In June, 1890, pursuant to the provisions of the statute, an election was held within the district to determine whether its bonds should be issued, resulting in favor of issuing the same, and in the years 1891, 1892, 1893 its board of directors purported to issue bonds of such Tulare irrigation district in the sum of $500,000, being 1000 bonds of the face value of $500 each, and levied assessments on the property embraced in said district, purporting to act in so doing under the act of the legislature, and previous to July 1, 1896, it assessed, levied and collected taxes upon the lands in such district of over $100,000, and paid the same out through its treasurer as interest upon such bonds; the proceeds arising from the sale of the bonds have been used by the district in constructing a system of canals, ditches and laterals through the lands of the district, by means of which such lands have been irrigated; it has engaged in litigation as plaintiff in suits before the issuing of such bonds, and therein alleged that it was a corporation under the provisions of the act of the legislature, and from the time of its purported organization until the present time, whatever it has done and performed, it has done and performed in the same manner as if it had been legally organized as such district, in full compliance with the law, and so continues to act and hold itself out as a corporation organized under that law.   No one ever brought suit or took any action to prevent the issuing of any of the bonds, nor was any suit or action ever brought to annul or cancel or have declared void any of the bonds until after the year 1896.   No action in the nature of a *quo warranto* was ever commenced, nor any other proceeding, to test the validity of the organization of the district.

The plaintiff at the commencement of the action was the holder and owner of the coupons upon which action was brought, and became the holder of the coupons on which he brought his action under the circumstances detailed in the agreed statement of facts, showing that he was a *bona fide* holder for value without notice.

The plaintiff also offered, and the same was received in evidence, the judgment roll *In the matter of Tulare Irrigation District,* in the Superior Court of Tulare County, which was a

proceeding under what is called the California confirmation act in regard to irrigation districts, and which is mentioned in *Tregea* v. *Modesto Irrigation District*, 164 U. S. 179, 181. The proceedings under this confirmation act showed a judgment of the court confirming the validity of the organization of the district. This was duly objected to, and received under the exception of the defendants. After some oral evidence had been given in regard to the execution of the bonds by the officers of the district, the plaintiff rested.

The defendants then offered separately each of the remaining paragraphs from 13 to 21, both inclusive, in the agreed statement of facts, and each under the objection of the plaintiff and exception of the defendants was excluded. From the facts thus offered it appears that a petition addressed to the board of supervisors of Tulare County was on July 1, 1889, filed with the board at a regular meeting; that this petition was printed and published prior thereto for two weeks during the month of June, 1889, and in a newspaper printed and published in Tulare County. The petition contained a statement that the petitioners were freeholders owning land within the district which was described in the petition, and that it was all situated within Tulare County, and that the petitioners desired to provide for the irrigation of the same; that the proposed district as described was susceptible of one mode of irrigation from a common source and by the same system of works, by conveying the waters of Kaweah River by means of dams thereon and by main and distributing canals therefrom. The petitioners prayed that the district described in the petition be organized into an irrigation district under the act of the legislature of California approved March 7, 1887. The petition then gave the boundaries of the proposed district, and asked that it be designated as the Tulare irrigation district. This petition was signed at the end thereof, each petitioner stating the number of acres owned by him. Following these signatures was a paper like this:

"Notice.

"Pursuant to the statutes in such cases made and provided, notice is hereby given that the above and foregoing petition

will be presented to the board of supervisors in and for the county of Tulare, at their first regular meeting in the month of July, 1889, to wit, on Monday the first day of July, 1889, at which time any person or persons desiring so to do may present their objections, if any they have, why said petition should not be granted."

The signatures to the petition were not repeated at the end of the notice. This notice was in the same type as the petition, and in the newspaper it was enclosed with the petition between two black lines across the column, the first at the head of the petition and the last at the end of the notice.

The alleged defect in this publication consists in the fact that although the petition was printed in full and the names of the signers with the number of acres owned by them follow the petition, yet as the notice of the presentation of the petition follows the signatures to such petition, and the notice is not signed by the petitioners, it lacks those essential signatures, and for that reason is not a valid notice, and becomes in law no notice whatever.

The defendants also offered in evidence a second judgment in the matter of the Tulare irrigation district setting aside the former judgment of confirmation and refusing to confirm the validity of the organization of the district. The judgment was excluded upon the objection of the plaintiff. All these offered facts having been excluded, the court made a general finding in favor of the plaintiff. The individual defendants now contend that the court, in granting judgment for the plaintiff, did in effect permit the taking of their property without due process of law, in violation of the Constitution of the United States.

*Mr. George H. Maxwell* and *Mr. John Garber* for plaintiff in error. *Mr. Calvin L. Russell, Mr. G. W. Zartman* and *Mr. R. M. F. Soto* were on their brief.

*Mr. S. F. Leib* for defendant in error.

MR. JUSTICE PECKHAM, after making the foregoing statement of facts, delivered the opinion of the court.

It is agreed in the statement of facts in this case that the moneys received from the sale of the bonds in suit were applied to building and constructing the irrigation works now in use by the defendant corporation. It has, therefore, received the full consideration for which the bonds were issued, has built its works with the proceeds, and uses such works for the purposes intended. · Notwithstanding these · facts, it now refuses to pay the bonds or the interest thereon, and, while acting as a corporation, at all times, still sets up that it was never legally organized, and hence had no legal right to issue any bonds.

In the case of *Douglas County Commissioners* v. *Bolles*, 94 U. S. 104, 110, a case involving facts somewhat similar, this court said: " Common honesty demands that a debt thus incurred should be paid." That sentiment has lost no force by the lapse of time, and we think it applies in its full strength to this case. · Unless there be some settled rule of law which prevents a recovery in this action, the judgment under review should be affirmed.

The sole ground of defence which has been urged at the bar has been an alleged defect in the notice of the intended presentation of the petition to form the district, to the board of supervisors, the defect consisting in the omission to add at the end of the notice the names of the signers to the petition which immediately precedes it. ·

Section two of the act approved March 7, 1887, commonly called the " Wright Act " of the California legislature, provides that the petition for the organization of an irrigation district shall be presented to the board of supervisors of the county in which the lands are situated, signed by the required number of freeholders mentioned in the first section, which petition must describe the proposed boundaries of the district, and pray that the same may be organized under the provisions of the act. The petition must be presented at a regular meeting of the board of supervisors and be published for at least two weeks before the time at which the same is to be presented, in some newspaper printed and published in the county where the petition is to be presented, " together with a notice stating the time of the meeting at which the same will be presented."

In this case a proper petition complying with the provisions of the act was made and signed by the requisite number of freeholders. The petition, with the signatures of such freeholders appended, was published in the proper newspaper, together with a notice as provided for in the act, but the signatures of the freeholders which were appended to the petition were not reproduced at the end of the notice. The petition, signatures and notice were published in the same column and as one entire proceeding, separated from the rest of the contents of the newspaper by a black line across the column immediately preceding the petition and another black line across the column at the end of the notice. In this way it was separated from all other matter in the paper. It is now urged that this failure to reprint the signatures to the petition at the end of the notice rendered it of no effect in law, and that the result was the same as if no notice at all had been published. It is, therefore, argued that the action of the board of supervisors, when the petition was in fact presented and proof taken in regard to the facts stated therein, in accordance with the published notice, was without legal effect, and the determination of the board of supervisors, after a hearing before it, that some of the lands described in the petition would be benefited by irrigation, including those of the individual plaintiffs in error was wholly without validity, because the board acquired no jurisdiction over the subject on account of the absence of notice; the board, having no jurisdiction, could make no valid determination as to the organization of the district; the district could issue no valid bonds; and the fact of the absence of notice could be shown as a defence to bonds that were issued, no matter under what circumstances the defence should arise. It was then contended that to permit a recovery would result in the taking of the property of the individual defendants, by means of an assessment and without due process of law.

It is not urged here that the plaintiff below was not a *bona fide* purchaser for full value without notice of any defective organization or want of power in the corporation to issue the bonds. Upon the stipulation of facts no such defence could prevail. The whole force of the defence rests, therefore, upon

this alleged defective notice because of the failure to reprint the names of the signers to the petition at the end of such notice. Is this such a defect as to practically amount to an absence of notice so that the board of supervisors could acquire no jurisdiction upon presentation of the petition? Certainly the notice could mislead no one. It gave full and detailed information in regard to the time and place at which the petition would be presented to the board of supervisors. It cannot be claimed that the notice itself did not give all the information provided for by the statute, and it warned all persons who might desire so to do to present their objections at the time and place named why the petition should not be granted. Any one on reading the notice obtained thereby all necessary knowledge to enable him to attend at the time and place mentioned and present any objection that he might have against the granting of the petition. The petition which preceded the notice was signed by a sufficient number of landowners, and the notice which followed the signatures to the petition evidently formed part of the proceeding inaugurated by the signers to the petition to take the necessary steps to organize an irrigation district. The whole thing, petition, names of signers thereto, and notice, was published the statutory time and also posted as required. As published, it evidently formed but one proceeding, and the notice was part thereof. Could any one fairly misunderstand the fact that the notice was part of the action of the signers to the petition, and, when precisely in accordance with the terms stated in the notice, the petition was publicly presented to the board of supervisors, was not the statute sufficiently complied with to give jurisdiction to that body to proceed to determine the facts in accordance with the provisions of the statute? Was not the notice fairly and substantially authenticated as a notice given by the signers to the petition?

In the case of *In re Central Irrigation District*, 117 California, 382, the Supreme Court of that State has held that the publication of a notice similar to this, unsigned and unauthenticated, was invalid, and the defect could not be cured by proof of actual notice or knowledge on the part of those to be affected thereby. It is urged that this decision of the Supreme Court

of the State should be followed by us, because it is in effect the construction given by the state court to a statute of the State. We are not entirely persuaded that this claim is well founded. It might, on the contrary, be urged with much force that the decision was based upon principles of general law as to whether a notice presupposes by its very terms, and makes absolutely necessary in all cases, a signature at the end thereof, and it might be claimed that the case came within the principle decided in *Venice* v. *Murdock*, 92 U. S. 494, where this court refused to follow the prior decisions of the Court of Appeals of the State of New York made in cases arising upon a New York statute and under a similar state of facts, on the ground that those decisions did not present a case of statutory construction. See also *Thompson* v. *Perrine*, 103 U. S. 806. And again, the bonds in question here were issued not later than 1893, while the decision of the California state court was not made until June, 1897, and there being no other decision of the state court upon the particular point it might be reasonably maintained that the matter should be regarded as open to be decided in accordance with our own views of the subject.

We do not deem it necessary to decide the question here, because there are other facts upon which we can base our judgment without impugning the decision of the state court. Assuming, therefore, for the purpose of this case, though not deciding, that the notice was insufficient, and did not fully comply with the statute, it will be seen that the case above referred to does not decide that the question of the defective organization could be raised as against *bona fide* holders of bonds issued by the district. The action in that case was commenced under a California statute providing for the taking of proceedings to confirm the validity of the organization of an irrigation district, and although the statute under which an irrigation district is to be formed provides for a determination of the fact of due organization by the board of supervisors, yet the proceedings under the confirmation act are expressly directed to be had to review the determination of that board, so that there is express statutory authority to go behind that determination in that proceeding.

But assuming that the failure to sign the notice resulted in a failure to organize a *de jure* irrigation district, and that in a direct proceeding, such as is provided for by the confirmation act, or in a *quo warranto* action, the determination of the board of supervisors could be reviewed, it does not follow that such determination could be reviewed in a collateral action on the part of a *bona fide* holder of bonds to recover the principal or interest thereon. In the case spoken of the Supreme Court of California, while deciding upon the invalidity of the organization, refused to pass upon the question whether the bonds of the district were void for the reason that proper notice was not given, and the court in refusing to decide the question remarks that, "It is not proper because some of the bonds (it is insisted) had been sold and had passed into the hands of *bona fide* purchasers before the institution of this proceeding. . . . After the issue, and before the sale, of any of the bonds it may well be of advantage to the district and to intending purchasers that the judgment of a court should be invoked to pass upon the regularity of the action of the district officers, but after sale different questions present themselves. The bonds are negotiable ; public corporations are estopped from setting up many defences of irregularity against the innocent holders of such negotiable securities. Whether or not the holder be an innocent purchaser and a purchaser without notice, is itself a question which cannot be determined in this proceeding. From all these considerations, and others which will readily suggest themselves, it is proper, in cases where bonds of a district have been actually sold before institution of confirmation proceedings, to refuse consideration to questions of the regularity of such sales, leaving their determination to that forum before which appropriate action may be brought to test the questions, for it is only in such an action before such a court that there will be found full and unquestioned jurisdiction of the subject matter, and of all the necessary parties, as well as power to determine all objections and defences." We may therefore proceed to the inquiry as to the liability of the corporation to a *bona fide* holder of its bonds, without further reference to the above case.

The Supreme Court of the State has held that irrigation districts were public municipal corporations, *Central Irrigation District* v. *De Lappe,* 79 California, 351; *In re Madera Irrigation District,* 92 California, 296; *Quint* v. *Hoffman,* 103 California, 506, and the statute providing for their creation has been held to be one that should be liberally construed. 79 California, *supra.* The Supreme Court of California and this court have also decided that the irrigation act is a valid statute, and that it violates neither the state nor the Federal Constitution. *Fallbrook case,* 164 U. S. 112–159, and cases cited.

Even though the irrigation district failed to become organized as a *de jure* corporation, it may still have been acting as a corporation *de facto.* That there may be such a corporation cannot be doubted. *Baltimore & Potomac Railroad Company* v. *Fifth Baptist Church,* 137 U. S. 568, 571; *Shapleigh* v. *San Angelo,* 167 U. S. 646, 655; see also cases decided by the Federal courts in California, *Miller* v. *Perris Irrigation District,* 85 Fed. Rep. 693, again reported in 99 Fed. Rep. 143; *Herring* v. *Modesto Irrigation District,* 95 Fed. Rep. 705; also *Lamming* v. *Galusha,* 81 Hun, 247, affirmed by the Court of Appeals on the opinion of the court below in 151 N. Y. 648; *Stout* v. *Zulick,* 48 N. J. Law, 599; *Snider's Son's Co.* v. *Troy,* 91 Alabama, 224; *American Salt Co.* v. *Heidenheimer,* 80 Texas, 344; Taylor on Corporations, 4th ed. sec. 146.

From the authorities, some of which are above cited, it appears that the requisites to constitute a corporation *de facto* are three: (1) a charter or general law under which such a corporation as it purports to be might lawfully be organized; (2) an attempt to organize thereunder; and (3) actual user of the corporate franchise. The case at bar contains these requisites. There was a general valid law under which a corporation, such as the defendant is claimed to be, could be formed; there was undoubtedly a *bona fide* attempt to organize thereunder, and there has been actual user of the corporate franchise. In the progress of the attempt to organize the district the determination of the board of supervisors was made under the provisions of the statute, declaring the body to be a duly organized irrigation district. Subsequently officers were elected

and took office and have ever since discharged the duties thereof under the statute, and a special election was held to determine the question of issuing bonds, and the bonds were issued pursuant to the result of such election, and suits have been commenced in the name of the corporation. In brief, if anything can constitute a *de facto* corporation, the defendant herein constitutes one.

The case of *Norton* v. *Shelby County,* 118 U. S. 425, contains no doctrine in opposition. In that case the state court of Tennessee had held that the so-called board of commissioners of Shelby County, organized under the act of March 9, 1867, had no lawful existence; that it was an unauthorized and illegal body, and its members were usurpers of the functions and powers of the justices of the peace of the county; that their action in holding a county court was void, and that their acts in subscribing to the stock of the Mississippi Railroad Company and issuing bonds in payment therefor were void. Those acts the bondholders had endeavored to sustain by claiming that they were the acts of *de facto* officers, and that under such circumstances it was not material whether the board of commissioners had a lawful existence or not. This court held there could be no *de facto* officer where the office itself had no legal existence. If there be no office to fill, there can be no officer either *de jure* or *de facto,* and as the act attempting to create the office never became a law, the office itself never came into existence; it was a misapplication of terms to call one an officer who holds no office, and a public office could exist only by force of law.

In the case now before us there was a valid law providing for the creation of just such a corporation as the defendant claimed to be. There was a *bona fide* attempt to organize under it and there had been a user of the franchise, and within the authorities already cited a corporation *de facto* was thereby constituted.

Being a *de facto* corporation, the general rule is that none but the State can call its existence in question. The courts of California agree that such is the rule. *People* v. *Montecito Irrigation Company,* 97 California, 276; *Quint* v. *Hoffman,* 103

California, *supra;* see also, Cooley on Constitutional Limitations, page 312, 4th ed.; *Swartwout* v. *Michigan Air Line Railroad Co.*, 24 Michigan, 389, 393. The rule as stated by Cooley in Constitutional Limitations, 6th edition, 309, is as follows:

"In proceedings where the question whether a corporation exists or not arises collaterally, the courts will not permit its corporate character to be questioned, if it appear to be acting under color of law, and recognized by the State as such.  .  .  . And the rule, we apprehend, would be no different, if the constitution itself prescribed the manner of incorporation. Even in such a case, proof that the corporation was acting as such, under legislative action, would be sufficient evidence of right, except as against the State, and private parties could not enter upon any question of regularity. And the State itself may justly be precluded, on principles of estoppel, from raising any such objection, where there has been long acquiescence and recognition."

It was held in *Shapleigh* v. *San Angelo*, 167 U. S. *supra*, that none but the State could impeach the validity of the creation of a municipal organization, and that if it acquiesced therein the corporate existence could not be collaterally attacked. The court, through Mr. Justice Shiras, said:

"The doctrine successfully invoked in the court below by the defendant, that where a municipal incorporation is wholly void *ab initio*, as being created without warrant of law, it could create no debts and could incur no liabilities, does not, in our opinion, apply to the case of an irregularly organized corporation, which had obtained, by compliance with a general law authorizing the formation of municipal corporations, an organization valid as against everybody, except the State acting by direct proceedings. Such an organization is merely voidable, and if the State refrains from acting until after debts are created, the obligations are not destroyed by a dissolution of the corporation, but it will be presumed that the State intended that they should be devolved upon the new corporation which succeeded, by operation of law, to the property and improvements of its predecessor."

It cannot be said that this corporation was created without warrant of law. There was a valid law and there was a *bona fide* attempt to organize under it, and the most that can be said is that there was a failure to comply with all the directions of the statute by which a corporation *de jure* might be organized.

It is contended, however, that there is an exception to the general rule in such a case as this, because the proceedings of the corporation may result in the levy of an assessment upon lands of private owners within the district, and such owners are therefore permitted to raise at any time the question of the illegality by reason of the want of notice of the organization of the corporation. The case in 117 California, *supra*, also the cases of *Reclamation District* v. *Burger*, 122 California, 442, and *Fallbrook Irrigation Company* v. *Bradley*, 164 U. S. 112, 170, are cited to show the illegality of an organization without notice. On the other hand, *Reclamation District* v. *Gray*, 95 California, 601, holds that the landowner could not collaterally attack the validity of the organization of the district. It is true there was a validating statute passed in that case and the assessment was made after the date of the passage of such act, but the act assumed to cure the irregularities of an organization prior thereto. In *Swamp Land District* v. *Silver*, 98 California, 51, it was again held that no attack upon the organization could collaterally be made, even in an action to recover an assessment. But whatever may be the decisions in California, the plaintiffs in error claim that this court in *Fallbrook Irrigation Company* v. *Bradley*, 164 U. S. *supra*, has held that there must be notice to the landowner and an opportunity to contest the question of alleged benefits to his property by the organization of the irrigation district, or else the organization is invalid and the landowner can show it in a collateral action and at any time the question may arise. It is not denied that the statute provides for a notice and an opportunity to be heard, but the allegation simply is that there was not any notice in fact.

The *Fallbrook case* held that the statute did provide for notice and opportunity to show that the land would not be benefited by being included in the district. It did not hold that under

all circumstances the landowner could, at any time, show the absence of notice even against a *bona fide* purchaser of bonds subsequently issued, and we think that the landowner may be prevented from showing want of notice in such a case as the one presented herein—a *bona fide* holder of bonds for full value without notice, and a landowner sleeping upon his rights.

The case of *New York Cable Company* v. *Mayor, &c.*, 104 N. Y. 1, 43, is cited to the point that where it is sought to take the property of an individual under powers granted by the State to a corporation to be formed in a particular manner therein directed, the constitutional protection of the rights of private property requires that the powers granted be strictly pursued and all the prescribed conditions performed, and that hence, if the corporation be simply a *de facto* and not a *de jure* corporation, it cannot take private property *in invitum*. The case simply asserts the principle that the right of eminent domain cannot be exercised by a corporation *de facto*, and that the question of valid organization could be raised when such a corporation sought to condemn lands. That is one of the exceptions to the general rule in regard to a corporation *de facto*. When a corporation seeks to divest title to private property and to take it for the purposes of its incorporation, it must then show that it is a corporation *de jure*, for the law has only given the right to take private property to that kind of a corporation. But even in such case it may happen that a party would be precluded from setting up the defence by matters *in pais* amounting to an estoppel or an admission.

It is enough to say here, however, that this action by an individual plaintiff against a corporation *de facto*, to recover a money judgment for a debt due the plaintiff, bears no similarity to a proceeding by a corporation to condemn land for its own use, in which case it must be a corporation *de jure*.

In this case we have the fact that the plaintiff is a *bona fide* purchaser of the coupons, for value and without notice of any defect in their validity, and an examination of the statute shows provision for the determination by the board of supervisors of the fact that the district has been duly organized. The record shows the entry of an order by the board of supervisors, by

which that board declared the territory embraced in the limits therein described to be an irrigation district, duly organized under the name and style of the Tulare irrigation district, situated in the county of Tulare and State of California. A copy of this order was filed in the office of the county recorder, and after the date of such filing the statute declares the organization shall be complete. Section 15 of the statute provides that when the bonds shall be issued " said bonds shall express on their face that they were issued by authority of this act, stating its title and date of approval."

It thus appears that the statute confided to and imposed upon the board of supervisors the duty of inquiry by proof as to compliance with the statute and required a decision by it in regard thereto, and when the provisions of the statute had been complied with and the corporation organized the duty was imposed upon the board (section 3) to " declare such territory duly organized as an irrigation district under the name and style theretofore designated." All this was done. The board of supervisors made its determination; it was the body provided for and appointed by the statute to make it, and it was to be made by an order duly entered and a copy of it filed with the county recorder, thus making a full and complete record of the fact of the determination by the board of the question of organization confided to the board for decision by the statute itself. The proof shows that officers were duly elected, entered upon the duties of their various offices, and that an election was held and the district determined to issue bonds. The landowners acquiesced in the action of the board of supervisors from the time of the presentation of the petition to that body, so far that none questioned the validity of the organization by *quo warranto* or otherwise, and no suit of any kind was instituted to prevent the issue of the bonds. Not only were no steps taken to prevent their issue or test the right of the district to issue them, but their sale was made after a public election, and the proceeds arising therefrom were used to create and build the irrigation system, which is still in active operation and now in the possession of the company. Interest has been paid on the bonds thus issued (which issue was not later than 1893) up to 1896. Assess-

ments to pay the interest arising during that time have been levied and collected from the owners of lands in the district. Under these circumstances and by reason of the statute and the recitals in the bonds we think the landowner is estopped from setting up the defence of the want of notice, as against the plaintiff in this case, because he is a *bona fide* holder for full value without notice, and because the landowners acquiesced in the issue of the bonds and have received the full benefit of their proceeds.

The bonds in this case contained a recital in accordance with the provisions of the statute, as follows : " This bond is one of a series of bonds amounting in the aggregate to $500,000, caused to be issued by the board of directors of said Tulare irrigation district, by authority and pursuant to the provisions of an act of the legislature of the State of California entitled ' An act to provide for the organization and government of irrigation districts and to provide for the acquisition of water and other property, and for the distribution of water thereby for irrigation purposes, approved March 7, 1887,' and also by authority of and in accordance with the vote of the qualified electors of said irrigation district at a special election held on the 7th day of June, 1890." The provision in the statute, that the bonds should express on their face that they were issued by authority of the act, stating its title and date of approval, was evidently for the purpose of giving them greater negotiability. A recital as directed by the statute, that the bond was issued by the authority of the statute, and also pursuant to the provisions thereof, and in accordance with the vote of the qualified electors, was a statement upon which a purchaser would have the right to rely, and to assume therefrom that all prior acts necessary to be done to give the bond validity had been done, because otherwise the bond would not be issued under the authority and pursuant to the provisions of an act which provided for certain things to be done when they were not done in the particular case in hand.

But even if the recital were not broad enough to conclude the party who issued the bonds, which we do not at all admit, yet as the statute invested the board of supervisors with power to

decide whether the district had been duly organized, the exercise of that power by the board and its determination that the district had been legally and duly organized, (such. determination being evidenced by the order duly recorded as provided for in the statute,) was a finding of fact upon which the purchaser had a right to rely, as it was the record provided by the statute, made by a body directed by it to determine the very fact in question, and in such cases the finding is conclusive in favor of a *bona fide* holder of bonds. *Coloma* v. *Eaves*, 92 U. S. 484; *Venice* v. *Murdock*, 92 U. S. 494.

In *Bissell* v. *Jeffersonville*, 24 How. 287, the common council of the city had authority to subscribe for stock in a railway company and to issue bonds for such subscription upon the petition of three fourths of the legal voters of the city. The common council made a determination that the petition presented contained three fourths of such legal voters, and the bonds were thereupon issued. The bonds having been issued, the city defaulted in the payment of the interest, and an action was brought to recover such installments in the Circuit Court of the United States for the District of Indiana. After the plaintiff had given evidence from the records of the common council that it had determined that three fourths of the legal voters of the city had petitioned for the issuing of such bonds, the defendant offered parol testimony to show that three fourths of the legal voters of the city did not so petition. The evidence was admitted under objection, and under the rulings the jury returned a verdict in favor of the defendants, and the case was brought here for review. This court, upon that question, through Mr. Justice Clifford, said (page 296):

"Unless three fourths of the legal voters had petitioned, it is clear that the bonds were issued without authority, as by the terms of the explanatory act it could only apply to a case where the common council of a city had contracted the obligation or liabilities therein specified upon the petition of three fourths of the legal voters of such city; and if no such petition had been presented, or if it was not signed by the requisite number of the legal voters, the law did not authorize the common council to ratify and affirm the subscription. That fact, however, had

been previously ascertained and determined by the board to which the petition was originally addressed."

The court then considered the effect of the determination by the common council as between the defendant and the holders for value of the bonds without notice of the supposed defects in the proceedings under which they were issued and put upon the market, and stated as follows (p. 299):

" Jurisdiction of the subject-matter on the part of the common council was made to depend upon the petition, as described in the explanatory act, and of necessity there must be some tribunal to determine whether the petitioners, whose names were appended, constituted three fourths of the legal voters of the city, else the board could not act at all. None other than the common council, to whom the petition was required to be addressed, is suggested, either in the charter or the explanatory act, and it would be difficult to point out any other sustaining a similar relation to the city so fit to be charged with the inquiry, or one so fully possessed of the necessary means of information to discharge the duty. Adopting the language of this court in the case of the *Knox County Commissioners* v. *Aspinwall et al.*, 21 How. 544, we are of the opinion that ' this board was one, from its organization and general duties, fit and competent to be the depositary of the trust confided to it.' Perfect acquiescence in the decision and action of the board seems to have been manifested by the defendants until the demand was made for the payment of interest on the loan. So far as appears, they never attempted to enjoin the proceedings but suffered the authority to be executed, the bonds to be issued, and to be delivered to the railroad company, without interference or complaint. When the contract had been ratified and affirmed, and the bonds issued and delivered to the railroad company in exchange for the stock, it was then too late to call in question the fact determined by the common council, and *a fortiori* it is too late to raise that question in a case like the present, where it is shown that the plaintiffs are innocent holders for value."

The statute in the present case distinctly provides for the determination of the question of fact by the board of supervisors and for the embodying of such determination in an or-

der, to be entered and a certified copy to be filed with the county recorder. It is not left to inference as to which is the body to make the determination.

In *Anderson County Commissioners* v. *Beal*, 113 U. S. 227, the question arose as to whether there had been the requisite length of notice of the election to determine the question whether or not the bonds should be issued. The statute required that at least thirty days' notice of the election should be given, and it was thereby made the duty of the board of county commissioners to subscribe for the stock and issue the bonds after such assent of the majority of the voters had been given. Subsequently in a suit against the board of county commissioners on coupons due on the bonds that had been issued and which had been bought by a *bona fide* purchaser, the record showed an order for the election made thirty-three days before it was to be held, and that subsequently to the election the board canvassed the returns and certified that there was a majority of the voters in favor of the proposition, and that the board had made such vote the basis of their action in subscribing to the stock and issuing the bonds to the company. The bonds recited on their face that they were issued "in pursuance to the vote of the electors of Anderson County, of September 13, 1869." It was held that the statement in the bonds as to the vote was equivalent to a statement that the vote was one lawful and regular in form, such as the law then in force required as to prior notice, and that as respected the plaintiff, evidence by the defendant to show less than thirty days' notice of the election could not avail. At page 238 the court said:

"The bond recites the wrong act, but if that part of the recital be rejected, there remains the statement that the bond 'is executed and issued' 'in pursuance to the vote of the electors of Anderson County, of September 13, 1869.' The act of 1869 provides that when the assent of a majority of those voting at the election is given to the subscription to the stock, the county commissioners shall make the subscription, and shall pay for it, and for the stock thereby agreed to be taken, by issuing to the company the bonds of the county. The

provision of section 51 is 'that when such assent shall have been given,' it shall be the duty of the county commissioners to make the subscription. What is the meaning of the words 'such assent?' They mean the assent of the prescribed majority, as the result of an election held in pursuance of such notice as the act prescribes. The county commissioners were the persons authorized by the act to ascertain and determine whether 'such assent' had been given; and necessarily so, because, on the ascertainment by them of the fact of 'such assent,' they were charged with 'the duty'—that is the language—of making the subscription, and the duty of issuing the bonds. They were equally charged with the duty of ascertaining the fact of the assent. The record evidence of their proceedings shows that their order for the election was made thirty-three days before the election was to be held; that they met 'pursuant to law for the purpose of canvassing returns of the election;' that they discharged that duty and certified that there was a majority of votes in favor of the proposition; that, in November, 1869, they resolved that, 'in accordance with the vote, heretofore had and taken, of the electors of said county to that effect,' they subscribed for the stock; and that, in July, 1870, in their order authorizing the bonds to be delivered by Joy to the company, they recited that the bonds were issued 'according to the provisions of the vote of the electors of said county.' In view of all this, the statement by the commissioners, in the bond, that it is issued 'in pursuance to the vote of the electors of Anderson County, of September 13, 1869,' is equivalent to a statement that 'the vote' was a vote lawful and regular in form, and such as the law then in force required, in respect to prior notice. The case is, therefore, brought within the cases, of which there is a long line in this court, illustrated by *Town of Coloma* v. *Eaves*, 92 U. S. 484, 491, and which hold, in the language of that case, that 'where legislative authority has been given to a municipality or to its officers to subscribe for the stock of a railroad company, and to issue municipal bonds in payment, but only on some precedent condition, such as a popular vote favoring the subscription, and where it may be gathered from the legislative enactment that

the officers of the municipality were invested with the power to decide whether the condition precedent has been complied with, their recital that it has been, made in the bonds issued by them and held by a *bona fide* purchaser, is conclusive of the fact, and binding upon the municipality; for the recital is itself a decision of the fact by the appointed tribunal.' This doctrine is adhered to by this court. *Dixon County* v. *Field*, 111 U. S. 83, 93, 94."

In *Andes* v. *Ely*, 158 U. S. 312; the doctrine was affirmed that where an officer is charged by law with the duty to decide certain facts, his decision thereon is conclusive and takes the form of a judgment, only to be reviewed by a higher court. At page 324 the court said : " Whether the various steps were taken which in this particular case justified the issue of the bonds, was a question of fact; and when the bonds on their face recite that those steps have been taken it is the settled rule of this court that in an action brought by a *bona fide* holder the municipality is estopped from showing the contrary."

In *Provident Life & Trust Company* v. *Mercer County*, 170 U. S. 593, where the fact whether a condition precedent had been performed before the issuing of the bonds was confided for decision to a trustee, it was held that his decision that the condition precedent had been complied with was conclusive in favor of a *bona fide* holder, even though the condition had in fact not been performed.

And in the case of *Waite* v. *Santa Cruz City*, 184 U. S. 302, decided at this term, many authorities upon this question are cited in the opinion by Mr. Justice Harlan. Those authorities need not be repeated here, a reference to them as contained in that opinion being all that is necessary.

The case of *Ogden City* v. *Armstrong*, 168 U. S. 224, had nothing to do with the principles governing the law relating to *bona fide* owners of municipal bonds, or with the effect of recitals contained in such bonds. It was a case of an alleged invalid assessment levied to collect the cost of paving one of the public streets in the city. There was a direct attack made upon the validity of the assessment, founded upon an alleged lack of jurisdiction on the part of the common council. The action was

maintained under a well recognized head of equity jurisdiction, on the ground that the assessment, valid on its face, constituted a cloud upon the plaintiff's title, which required evidence *aliunde* to remove.

In addition to the strength of the position of the plaintiff in the action as a *bona fide* purchaser and holder of the bonds, the position of the defendants merits due consideration. Regarding the individual defendants, it is scarcely possible to believe that they were not aware of the proceedings above recited, taken to organize the corporation, and thereafter to issue its bonds, even though it should be admitted that the published notice was not legally sufficient to comply with the statute. They were the owners of land within the proposed district. The proceedings were all of a public nature, and two public elections were held within the district before the bonds were issued. Of these facts, already detailed, we say it is impossible to believe that the individual defendants did not have knowledge at the time of their occurrence, and yet they took no action to prevent the issuing of the bonds or to call in question by the slightest hint the validity of the organization of the district as a corporation. On the contrary, they entirely acquiesced in all the proceedings leading up to their issue, in obtaining the moneys therefrom, in the expenditure thereof for the purpose for which the bonds were issued, and in paying during several years the assessments made upon the lands within the district for the purpose of paying the interest on the bonds which had been issued. After all this had been done, we can properly use the language found in the opinion in *Bissell* v. *City of Jeffersonville,* 24 How. *supra,* at page 299 : " It was then too late to call in question the fact determined by the common council, and *a fortiori* it is too late to raise that question in a case like the present, where it is shown that the plaintiffs are innocent holders for value."

Assuming the insufficiency of the notice of the intended presentation of the petition to the board of supervisors, the defendant landowners could have applied to the attorney general for the commencement of an action in the nature of a *quo warranto,* to raise and decide the questions, after the board had decided the organization was duly formed. Or they could have them-

selves commenced an action to restrain the proposed issue of bonds on the ground there was no valid corporation, and therefore no valid body to issue them. Their interest as landowners in the district would be sufficient to permit them to maintain such action. On the contrary, they did nothing, and in view of all the facts above detailed, and giving due effect to the provisions of the statute referred to and the determination of the supervisors, together with the recitals in the bonds, it is clear to us that they waived their right to thereafter object on the ground stated, as against a *bona fide* holder of the bonds for value. As to the defendant corporation, it seems so clear that it cannot be heard to set up the invalidity of the bonds on the ground that it was not legally incorporated, that we do not think it necessary to further discuss the question. Taylor on Corporations, 4th ed. sec. 146, and cases cited in note.

We have given no weight to the two judgments taken under the confirmation act of the California legislature, the first of which was entered before the bonds were issued, and confirmed the validity of the organization while the second was entered years after the bonds were issued, and refused to confirm the organization. In the view we take of this case it is unnecessary, and it is therefore needless for us to here discuss or determine the question of the effect which ought to be given them under other circumstances. The plaintiff below occupies an unassailable position upon the facts of the case as a *bona fide* purchaser, without reference to either judgment.

We are of opinion there is no error in the record, and the judgment of the court below is, therefore,

*Affirmed.*