HERMAN HOOPES et al., appellant,

*v.*

BASIC COMPANY, respondent.

[Argued November 21st, 1906.    Decided February 22d, 1907.]

1. Where a proceeding is brought by a stockholder of a corporation to have it placed under disabilities because of insolvency, whether the plaintiff is a stockholder, and so entitled to sue, may be tested in a summary manner by plea in case the suit is commenced by bill, or by answer in case it is instituted by petition.

2. Where complainant transferred all his stock in defendant company to another corporation in exchange for the stock of the latter, and received back from it a single share, which he endorsed in blank and returned, such stock being transferred to him for the sole purpose of enabling him to qualify as a director in defendant company, he was not a stockholder thereof within *P. L. 1896 p. 298 ch. 185 § 65*, authorizing a stockholder of an insolvent company to sue to have the corporation placed under disabilities by injunction in respect to the exercise of its franchise and for the appointment of a receiver.

On appeal from a decree of the court of chancery, advised by Vice-Chancellor Stevenson, who delivered the following opinion:

This is a bill filed under our Corporation act to have the defendant corporation, the Basic Company, declared insolvent and placed under disabilities in reference to the exercise of its franchises by an injunction and a receiver appointed. At the start the question was raised whether either of the complainants was qualified under our statute to bring this suit. One of the complainants alleges that he is a stockholder, holding one share of stock, of the par value of $10; the total capital stock being $1,000,000 par value. The other defendant, alleged to be a creditor, but practically counsel for the complainants, withdrew the claim that this co-complainant could be qualified as a creditor, and the question was presented whether Mr. Hoopes, the remaining complainant, is shown here to be a stockholder, so as to be

qualified to be the actor in this statutory suit against the corporation. The court suggested, and I think counsel acquiesced in the suggestion, that it would be proper to take the proofs first in regard to the status of Mr. Hoopes as a stockholder. Whether counsel acquiesced or not in that suggestion, it seems to me that in most cases it would be very wrong, indeed, to compel a corporation to submit all its financial affairs to the inspection of the court and the public, as long as it was uncertain whether the party complainant bringing the corporation into court had any status as a stockholder to carry on the suit. When the suit is commenced by bill, a proper mode of contesting the capacity of the complainant as a creditor or stockholder to bring the suit would be by plea. When the suit is commenced by petition, so that the technical rules of pleading which distinguish between demurrers, pleas and answers are to a large extent inapplicable, the answer to the petition in my opinion may well be strictly confined to the defence which we are considering in all cases where that defence is set up. But in all cases under our statute, whether on bill or petition, the trial is not hampered by forms or technical rules of procedure, but is "summary" in its nature, and very largely, at every stage, under the control of the court.

My conclusion is that the complainant is not qualified under our statute as a stockholder. The leading facts are these: At a time antedating the commencement of this suit by quite a period, the complainant, Mr. Hoopes, having a very considerable stock interest in this corporation, transferred all his holding of stock to the Union Dredging Company, and received in exchange about $60,000 par value of the stock of the Union Dredging Company. He admits on the stand, with great frankness, that what he received was full compensation for his stock. At the time this transaction occurred the Union Dredging Company transferred back to him a single share of stock, of the par value of $10, the share of stock by virtue of which he (Mr. Hoopes) now undertakes to sustain in this court his suit as a stockholder and invoke the statutory remedy against this corporation. There is no doubt, however, about what the purpose of this transfer was. There was no intention that Mr. Hoopes should be the beneficial owner of this share of stock. The transfer was made

in order that he might appear on the books of the company as a stockholder and thus apparently be qualified to act as a director. The intention was that he should become, and he did become, what is commonly called a "dummy" director. Immediately after the transfer of this stock (this single share of stock) to him and its proper transfer on the only stockbook they had, Mr. Hoopes immediately after, or within a year or two—not later than the summer of 1904, long before this suit was brought— endorsed the share in blank, and handed it back to the real owner, the Union Dredging Company. There is a discrepancy in the testimony as to the time when this was done. It is not material, even if we accept the complainant's testimony, because this transfer was made, as I said, not later than the summer of 1904. I strongly incline to the opinion that the transfer was made immediately after the share was made out to him. The share was made out to him for the purpose which I mentioned, he endorsed it and handed it back, and he did not have it in his possession afterwards; and, whichever date we take, in the summer of 1904, long before this suit was commenced, the Union Dredging Company, the actual owner of this share of stock, had the certificate in its possession, with the endorsement, in blank, of Mr. Hoopes, the party who appeared on the face of it as the holder of it. Of course Mr. Hoopes' name appears on the books of the company, if that expression can be applied to the mere stockbook; but Mr. Hoopes appeared on what books the company had as the holder of this one share of stock. Now, the question is, on which this whole controversy turns, whether Mr. Hoopes, holding this share of stock, nominally in this way, without any beneficial interest in it whatever—the sharp question, I say, in this case—is whether Mr. Hoopes, holding this single share of stock in this manner and for the purpose which I have indicated, is to be regarded as a stockholder within the meaning of that word as used in the sixty-fifth section of our Corporation act. *P. L. 1896 p. 298 ch. 185.* This section provides—and the language is the same that was employed when the law was first enacted as a part of the act to prevent fraud by incorporated companies in 1829—"whenever any corporation shall become insolvent or shall suspend its ordinary business for want of funds

to carry on the same, any creditor or stockholder may, by petition or bill setting forth the facts, invoke the jurisdiction of the court of chancery, and, upon proof of the facts upon summary hearing, have a decree placing the corporation under disabilities by an injunction in respect to the exercise of its franchises and also, if necessary, the appointment of a receiver." Now, the question is, is this man a stockholder within the meaning of that act? There are no cases that I am acquainted with, either in New York or New Jersey, in which this question has been discussed. I gave counsel an opportunity to present cases and discuss the question, but their briefs do not contain anything that is helpful. They undoubtedly made careful examination and failed to find any authorities that would throw light on this subject. There is one case, and one only, that I know of, where the meaning of the word "creditor" in this clause of the act which I have read was the subject of investigation. There have been a number of cases where the meaning of the word "creditor" in the subsequent clauses, which defines the parties who may come in and prove claims and take a share of the assets, has been discussed; and the rule is well settled that the word "creditor" in that part of the act, that part which deals with the beneficiaries who are to take dividends, is to be construed very liberally. The last case in which this matter is discussed was the case of *Lehigh and Wilkes-Barre Coal Co.* v. *Stephens & Condit Transportation Co.* The report of the case will be found in *63 N. J. Eq. (18 Dick.) 107.* I can state the leading facts sufficiently for present purposes from memory. In that case Vice-Chancellor Stevens holds that one having a claim for damages, unliquidated damages, against the corporation, based upon a tort of the corporation, may come into the insolvency proceedings and have his damages assessed, by a jury or otherwise, under the provisions of the act, and take a dividend ratably with the other creditors; and the reasoning upon which the vice-chancellor supports his conclusion seems to me to be unanswerable. He does not hold, nor has it ever been held, that such a person, holding a claim for unliquidated damages, is qualified as a creditor to be the actor in the suit; that does not follow. The case goes upon the idea that the assets are distributable to those

who have just claims of all kinds against the corporation, and as the residue is to be distributed to stockholders, it would be exceedingly unjust to leave claimants whose claims were based upon torts without relief against the assets while the stockholders were allowed to absorb them; and so, while such a claimant as I have mentioned is not a creditor, strictly speaking, at the time of the commencement of the insolvency proceedings, he is permitted to become a creditor by the establishment of his claim by a judgment, and thus he stands as a creditor before the proceedings are concluded and he takes his dividend. I give that case simply as an illustration to show the distinction between a creditor as defined in this act for the purpose of distribution, and a creditor as defined in the act for the purpose of allowing him to invoke the jurisdiction of the court as in this case. The case that I referred to a moment ago, which I think is the only case where the meaning of the word "creditor" under the first clause of section 65 is discussed, is *Fort Wayne Electric Corporation* v. *Franklin Electric Light Co.*, *57 N. J. Eq.* (*12 Dick.*) *16*. In that case Chancellor McGill holds, and the court of errors and appeals affirmed his decision for the reasons which he stated, that a creditor who had assigned his claim away, or had agreed to assign it away, but stood as the legal owner of the debt, having also a beneficial interest in the debt, because he had not been paid the price for the assignment—he had neither made the assignment, nor received the price—was qualified to maintain this suit. In the case of *Gallagher* v. *Asphalt Company of America, 65 N. J. Eq.* (*20 Dick.*) *258,* I referred to this subject as follows: "The meaning of the word 'creditor,' as used in our statute in defining the classes of persons who are authorized to maintain this statutory proceeding, has been discussed in several cases (which are here stated). It is settled that the word 'creditor' is not used in our statute in a narrow, technical sense. It is used in a broad sense, and I think it is safe to say that the general intention is that if a party is so related to the corporation and its assets as to be entitled to a share of what is divided among creditors—if the party can come into the proceedings as a claimant and prove his claim, so as to be entitled to a dividend—it must be generally true that he is qualified as a

creditor to institute the proceedings which result in the distribution of the assets in part to himself. But in this case it is not necessary to lay down so broad a rule as that in order to find that the complainants are qualified as creditors." In that case I indicated a general opinion that as a general rule if the party posing as a creditor, claiming the right to institute this statutory action, stood in such relation to the assets that he had a right to a share or a dividend, then he was properly qualified as a creditor to institute the action. Such further reflection as I have given to the subject has not disturbed that impression. I think, however, especially in view of this decision of Vice-Chancellor Stevens, one modification is necessary. The party who claims to be a creditor, so as to be entitled to institute this action, must, I think, at the time he comes into court with his bill, be a creditor, as distinguished from being merely entitled to become a creditor by the proof of a claim for damages. If the party complainant, asserting that he is a creditor by proving before the receiver precisely what he proves before the court in order to qualify himself to bring the suit, is entitled to a dividend, then I think he passes the test. Of course, a man who has a claim for damages for a tort cannot meet that test. He cannot come into court with a bill against the corporation and say, "I am a creditor;" but he can say, "I can make myself a creditor, if somebody else will only start these proceedings, by bringing forward my claim and having it proved, having a trial by jury."

Now, then, when you pass from the case of the creditor to the case of a stockholder, I know of no other test. If the party asserting that he is a stockholder has no interest as a stockholder in the assets, then it seems to me he cannot maintain this suit. He is not a stockholder within the meaning of this first clause of section 65. I stated to counsel, in postponing this case the other day, some of the leading principles which, I think, control, and which relate to the fundamental nature of this statutory action. I had occasion to discuss these principles at considerable length in the case of *Gallagher* v. *Asphalt Company of America,* 65 N. J. Eq. (20 Dick.) 258; 55 Atl. Rep. 259, in the same case in a subsequent opinion, reported in 58 Atl. Rep. 403, and more

recently in the case of *Pierce* v. *Old Dominion Copper Mining and Smelting Co., 58 Atl. Rep. 319.* It was because of the views which I expressed in these cases in regard to the nature of our statutory action that I laid this point over for further argument and further consideration. We have here not a private action *inter partes.* The complainant, whether he is a stockholder or a creditor, acts as the representative of the public, and particularly of the whole body of stockholders and creditors of the corporation. It is a great mistake to suppose that this is a collection suit or a creditors' suit. The complainant, if he is a creditor, by his decree, whether he is a creditor or stockholder—by his decree against the corporation, resulting in its being wound up and its assets being distributed—gets nothing necessarily advantageous to himself. He is obliged afterwards to come humbly before the receiver and prove his claim, and it may be rejected, and he may never have any share awarded to him in the assets, and that fact, as I have pointed out in this case, very strongly indicates that Chancellor Williamson and Chancellor Vroom were entirely right in saying that this is an action in which, not the particular grievance of the complainant is redressed, but the grievance of the public, including the whole body of stockholders and creditors. Now, with that sort of an action, in which the actor appears as the representative of other interests, in which the actor is not prosecuting for a decree which entitled him necessarily to anything himself, the question was raised in my mind what the legislature meant originally, and what it means now, in saying that a stockholder, any stockholder, may file this bill in which the rights of the public are so directly concerned, in which the rights of all the stockholders and all the creditors are concerned, and in which finally the actor, this representative, the complainant, may take nothing at all. The result of my reflection upon the subject in the absence of any authorities, is that the legislature means to commit the institution of this suit to the parties who are interested as creditors or as stockholders. The legislature relies upon the selfish interest of the creditor or of the stockholder to have suit brought when public interests require it. That is a very common principle that runs all through our jurisprudence, and is an ancient principle. All *qui tam* actions are based upon it. The original New York statute

of 1825, upon which our act of 1829—the act to prevent fraud by incorporated companies—was modeled, made it the duty of the attorney-general to bring the suit. A creditor, also, was permitted to bring the suit, but not a stockholder. A little later the stockholder was enabled to appear as the actor. Our New Jersey statute from the start allowed the suit to be brought by either a stockholder or a creditor, while it conferred no power and imposed no duty upon the attorney-general of the state in relation thereto. The legislative theory appears to have been that the public interests, and the interests of stockholders and directors of corporations particularly, would be best cared for if reliance was had upon the selfish interest of some stockholder or some creditor to come forward when the corporation becomes insolvent and its operations become inimical to public interests. Now, applying the test, does Mr. Hoopes appear as an outsider? He holds this piece of paper. No; he does not even hold the piece of paper which represents $10, one share of stock of this corporation. He was not even trusted to retain that certificate. It was issued to him, he endorsed it, and turned it back to the Union Dredging Company, and the dredging company owns it to-day; and if this suit should proceed, and there should be a dividend payable to stockholders, Mr. Hoopes would not get any dividend on that share of stock. It would go to the dredging company. In my judgment no corporation of the state should be bound to meet the attack of one who comes into court with a share of stock which he admits he does not own, which belongs to somebody else.

The views which I have endeavored to indicate lead to the result that the bill of complaint should be dismissed.

*Mr. George Whitefield Betts,* for the appellant.

*Mr. Thomas B. Harned,* for the respondent.

PER CURIAM.

The decree in this case is affirmed, for the reasons stated in the opinion filed in the court of chancery by Vice-Chancellor Stevenson.

*For affirmance*—THE CHIEF-JUSTICE, GARRISON, FORT, GARRETSON, HENDRICKSON, PITNEY, SWAYZE, REED, TRENCHARD, VREDENBURGH, VROOM, GREEN, GRAY, DILL—14.

*For reversal*—None.