## AMERICAN BALL BEARING CO. v. ADAMS.

(District Court, N. D. Ohio, E. D. April 12, 1915.)

No. 190.

1. CORPORATIONS ⟜1—WHAT ARE BODIES CORPORATE—LAW GOVERNING.

Whether or not an organization is a valid corporation de jure is to be determined by the statutes and decisions of the state where it is organized.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 1, 3–6; Dec. Dig. ⟜1.]

2. CORPORATIONS ⟜5—LEGALITY OF ORGANIZATION—QUALIFICATIONS OF CORPORATORS.

Legal infirmity in parties is as fatal to the validity of an attempted corporate organization as legal infirmity in the purpose of the organization.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 14, 15; Dec. Dig. ⟜5.]

3. CORPORATIONS ⟜14—LEGALITY OF ORGANIZATION—OTHER CORPORATIONS AS CORPORATORS.

A state statute, authorizing corporations within prescribed limits to become stockholders in other corporations, does not by implication carry a grant of power to corporations to themselves organize other corporations, in which they shall own all the stock.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 16–22; Dec. Dig. ⟜14.]

4. CORPORATIONS ⟜5—LEGALITY OF ORGANIZATION—QUALIFICATIONS OF CORPORATORS.

The provision of Gen. Code Ohio, § 8625, that "any number of persons, not less than five, desiring to become incorporated, may subscribe, acknowledge and file articles of incorporation," contemplates natural persons, who have an actual and real interest in the corporation to be formed.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 14, 15; Dec. Dig. ⟜5.]

5. CORPORATIONS ⟜5—LEGALITY OF ORGANIZATION—OHIO STATUTE—"HOLDER OF STOCK."

Gen. Code Ohio, § 8625, et seq., relating to the forming of corporations, provide that articles of incorporation may be filed by five persons; that 10 per cent. of the capital shall be subscribed before the election of directors; that 10 per cent. of the capital subscribed shall be payable at the time of subscription; that no person shall vote on a share of stock on which an installment is due and unpaid, and that the officers and directors must be holders of stock to an amount to be fixed by the by-laws; "holders of stock," as construed by the Supreme Court of the state,

---

⟜For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

meaning bona fide holders. Three corporations, each interested in motor cars or parts thereof and owning patents, undertook to form a new corporation under the Ohio law, in which they should be equally interested, to hold and handle their several patents. Five persons in the employ of the law firm having charge of the organization signed and filed articles of incorporation, and also subscribed for one share of stock each, and one, as trustee for one of the three organizing corporations, subscribed for enough more to make the required 10 per cent., and such corporation paid in cash the required 10 per cent. of such total subscriptions, but no more. The incorporators paid nothing, and had no pecuniary interest in the corporation. They held a stockholders' meeting, elected themselves directors, and adopted by-laws, and as directors elected officers from their number, and authorized the issuance of stock to the three organizing corporations in payment for patents assigned. They then resigned, one by one, electing representatives of such corporations in their places. *Held*, that such acts did not create a lawfully organized corporation, because (1) the law did not authorize the organization of a corporation by other corporations, which was in fact what was attempted; (2) there was not a bona fide subscription of 10 per cent. of the stock, nor a bona fide payment of 10 per cent. of the amount subscribed; and (3) the incorporators, not being actual and bona fide stockholders, were not authorized by the law to organize the corporation, nor to do the acts which they did.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 14, 15; Dec. Dig. ☞5.]

**6.** CORPORATIONS ☞28—DE FACTO CORPORATIONS—APPLICATION OF DOCTRINE IN FAVOR OF CORPORATION.

Where, in an attempted organization of a corporation, there has not been a substantial compliance with the law, so as to create a de jure corporation, it will be permitted to claim and exercise corporate privileges as a de facto corporation only as between it and parties with whom it has had contract relations, and when considerations of equitable estoppel or public policy justify it.

[Ed. Note.—For other cases, see Corporations, Cent. Dig. §§ 26, 70; Dec. Dig. ☞28.]

**7.** COURTS ☞354—DISMISSAL ON COURT'S OWN MOTION—INCAPACITY OF COMPLAINANT TO MAINTAIN SUIT.

Where a complainant, suing as a corporation in a federal court of equity, is without legal capacity to maintain the suit as a corporation either de jure or de facto, it is within the power, and is the duty, of the court to dismiss the case, although the question is not raised by the pleadings.

[Ed. Note.—For other cases, see Courts, Cent. Dig. § 934; Dec. Dig. ☞354.]

In Equity. Suit by the American Ball Bearing Company (the Kardo Company substituted as complainant) against Henry J. Adams, dealing as the Reo Motor Sales Company. Suit dismissed.

Edward R. Alexander and Hoyt, Dustin, Kelley, McKeehan & Andrews, all of Cleveland, Ohio, for plaintiff.

Fish, Richardson, Herrick & Neave, of Boston, Mass., and R. A. Parker, of Detroit, Mich., for defendant.

CLARKE, District Judge. This is a suit in equity, in which infringement of letters patent of the United States No. 792,690 is claimed, with the usual prayer for an injunction and an accounting. The

bill was filed on June 25, 1913. On motion of the Kardo Company, claiming to be a corporation of the state of Ohio, an order was entered on October 19, 1914, granting said the "Kardo Company" leave to file a bill in the nature of a supplemental bill, and that it be substituted for the American Ball Bearing Company as plaintiff in the suit.

Such a bill was filed on October 20, 1914, and in this bill the Kardo Company alleged that after the filing of the original bill and the answer, and while the case was pending in this court, to wit, on or about the 28th day of February, 1914, the Kardo Company acquired the entire right, title, and interest in the letters patent in suit from the American Ball Bearing Company. The case came on for final hearing on February 1, 1915, and in the progress of the trial vague suggestions by counsel for the defendant that there was some legal infirmity in the plaintiff, the Kardo Company, and by the counsel for the plaintiff that all was not right with the active defendant in the case, the National Automobile Chamber of Commerce, led the court, of its own motion, to inquire as to the occasion and meaning of such innuendoes. At the suggestion of counsel for the plaintiff, one of them took the witness stand, and stated that he did not think any of the directors of the company were bona fide owners of any shares of the capital stock of the company, but that the real bona fide owners of all of it were the three corporations, the American Ball Bearing Company, the Peerless Motor Car Company, and the Packard Motor Car Company.

After the hearing was concluded, and the court came to a consideration of what its decision should be, the question as to whether the Kardo Company was a lawfully organized corporation, such that it could be a proper party plaintiff in the case, pressed so insistently upon the attention of the court that it was decided to take further testimony upon this point, and accordingly after due notice to all counsel concerned, on March 8, 1915, all parties being represented, the court took further testimony upon this question framed by it, viz.: Is the Kardo Company so organized as a corporation as to make it a proper party plaintiff, competent to present a real and substantial controversy to this court in this cause? On this hearing full opportunity was given, and was availed of, to lay before the court precisely the character of the proposed and actual organization of the Kardo Company. The result of this additional testimony may be stated as follows:

"The three corporations, the American Ball Bearing Company, the Packard Motor Car Company, and the Peerless Motor Car Company, decided to form a corporation under the laws of Ohio, with a capital stock of $1,000,000, in which said corporations were to be equally interested, for the purpose, as stated in the articles of incorporation subsequently filed, of purchasing, leasing, or otherwise acquiring, and of registering, owning, and using inventions, improvements, trade secrets, processes, or interests therein, and applying for and receiving, purchasing, or otherwise acquiring letters patent or patent rights, or interests in or under letters patent, for or upon motors or other vehicles or means of transportation, and for or upon the mechanism, parts of equipment of the same, or the tools or machinery for the manufacture of same, or for selling, granting, or assuming licenses or rights under or in respect of such secrets, processes, inventions, improvements, or patents, and otherwise dealing in respect of or with the same, or either of them, and of

manufacturing, using, and dealing in the vehicles, articles, machinery, equipments, and parts covered by or provided for in said inventions, patents, or improvements, and of doing all things necessary, proper, and incidental to the transaction of said business or any part thereof."

It however appeared from the testimony of Walter C. Baker, a director of the Kardo Company, on the original hearing, that the prime purpose of organizing the Kardo Company was to transfer to it patents which each of the three companies had on automobile axle' equipment, which apparently interlaced or overlapped one another, so that, if one company gave a license under the patent which it owned, complaints of infringements and threatened suits straightway arose from one or another of the other companies, and the purpose of the organization was to so place the ownership of these patents in one company, to be organized by the three corporations, that one license could be given on "rear axle patents owned by them."

The evidence further shows that the following steps were taken for the purpose of organizing the Kardo Company as a corporation under the laws of Ohio:

Articles of incorporation were signed on the 21st day of February, 1914, by five men, all in the employ of the law firm in charge of the organization, and none of them connected otherwise than as attorneys with any of the three companies named as parties to the formation of the Kardo Company. These articles of incorporation were filed with the secretary of state on the 24th day of February, 1914. On the same day each of the subscribers to the articles of incorporation subscribed for one share of the capital stock, and one of them subscribed as trustee for the American Ball Bearing Company for 995 shares of the capital·stock of the proposed company, agreeing to pay for these shares $9,500 in cash and $90,000 by the transfer of patents by the American Ball Bearing Company to the Kardo Company. It further appears from the evidence that $10,000, being 10 per cent. of the $100,000 of stock subscribed for on February 24, 1914, was on the same day paid for by check of the American Ball Bearing Company, and that no money whatever was paid by any one of the persons named as incorporators of the company.

Abundant formal detail of waiver of notice of opening books of subscription to the capital stock in the manner and to the extent stated, of the filing of a certificate of subscription with the secretary of state, and of a waiver of the notice of the first stockholders' meeting appears in the record. At the first stockholders' meeting on this same day (February 24, 1914) the five incorporators were present and a code of regulations and by-laws was adopted, article 5 of which provides the number of directors shall be five, that the directors must be holders of stock of the company, and that a majority must be citizens of the state of Ohio.

A first directors' meeting was held on the same day, 30 minutes later than the stockholders' meeting, at which meeting four of the lawyers organizing the company were elected to the offices of president, vice president, secretary, and treasurer, and an elaborate resolution was solemnly passed adopting a proposed form of agreement between the

Ball Bearing Company, the Packard, and the Peerless Company, providing for the sale and transfer to the Kardo Company of letters patent by each company, for which each was to receive $200,000 of the capital stock of the Kardo Company. Immediately after this directors' meeting the stockholders reconvened, and a resolution was passed approving the action taken by the directors in approving the contract between the three corporations hereinbefore referred to, and as of the same date a written ratification of everything done by themselves as stockholders and directors of the Kardo Company was signed by the five lawyers who signed the articles of incorporation.

On the 27th day of February a special meeting of the stockholders of the company was called by the same lawyers who signed the articles of incorporation, and at this meeting the regulations were amended by them to make the number of directors six, instead of five. In the afternoon of the same day, the record shows a meeting of the directors of the Kardo Company, at which the five signers of the articles of incorporation and Walter C. Baker were present, and at that meeting the signers of the articles resigned one after another, as directors and officers, and their places were filled by the officers or directors of the three corporations which had united in the purpose to form a company.

The evidence shows, as has been stated, that the only money paid at the time the company was organized was paid by the American Ball Bearing Company. No one of the persons who acted as a stockholder at the first meeting of stockholders of the company, or who acted as director at any of the meetings of directors of the company up to the time of the trial of this case, had paid any money of his own for any stock of the company. The evidence shows that, when each of the persons acting as an incorporator resigned, he transferred the one share of stock which had been issued to him to his successor, but that the successor did not make any payment for such stock.

It also appears in the evidence that, after the question as to the regularity of the organization of the Kardo Company had been raised in this court, the persons who had acted as directors since the election on February 27, 1914, paid, under advice of counsel, each to his company, $100 for the share of stock which had been standing in his name, and by virtue of which he had been acting as a stockholder and director of the company. It also appears from the statement of Mr. Dorn, one of the directors and treasurer of the Kardo Company, that at the time of the organization counsel advised him that in order to act as a director of the company he must have complete and full ownership of at least one share of stock in the company; but the evidence shows, as I have stated, that the share in his name was not paid for until after the first hearing of the case.

No salaries have ever been paid to any of its officers by the Kardo Company. It has done so little business that it has not even employed a bookkeeper, Mr. Dorn saying that there was so little of such work to do that he did it himself without charge. The only office the company has had is that of Mr. Alexander, local patent attorney for the company, and the only business it has done has consisted in becoming a party to this suit and in commencing three other suits for infringe-

ment of patents. While it is said that strong efforts have been made to induce manufacturers of automobiles to take out licenses from the Kardo Company, it had not issued a single license up to the date of the second hearing.

This state of the record presents for decision the question: Is the Kardo Company a corporation de jure or de facto, such that it should be permitted to maintain a suit as party plaintiff in this court?

[1] And, first: Is it a corporation de jure? This is a question which must be answered by the statutes and decisions of Ohio, so far as answer can be found in them. Secombe v. Railroad Co., 23 Wall. 117, 23 L. Ed. 67; Flash v. Conn., 109 U. S. 379, 3 Sup. Ct. 263, 27 L. Ed. 966; Jellenik v. Huron Copper Mining Co., 177 U. S. 13, 20 Sup. Ct. 559, 44 L. Ed. 647. And see Rose's Code Fed. Pro. § 10, pars. (e) and (ee). The law of Ohio provides that:

"Any number of persons, not less than five, a majority of whom are citizens of this state, desiring to become incorporated, shall subscribe and acknowledge articles of incorporation," etc. G. C. § 8625.

This is obviously a grant of authority to natural persons to organize so as to become invested with corporate franchises; it is not a grant to corporations to so organize. The Ohio law differs from the law of many states, in that the mere filing of articles of incorporation in due form does not create or bring into existence a corporation, notwithstanding the provision of G. C. § 8629, that a certified copy of articles of incorporation shall be prima facie evidence of the existence of the corporation therein named. This is distinctly decided in State ex rel. v. Insurance Co., 49 Ohio St. 440, 31 N. E. 658, 16 L. R. A. 611, 34 Am. St. Rep. 573, the fifth paragraph of the syllabus of which case reads:

"The making and filing, for the purpose of profit, of articles of incorporation in the office of the secretary of state, do not make an incorporated company; such articles are simply authority to do so. *No company exists within the meaning of the statute, until the requisite stock has been subscribed and paid in, and the directors chosen.*"

Before the plaintiff can maintain this action as a de jure corporation, this rule of law requires an affirmative answer to the question:

"Had the Kardo Company a lawfully constituted and elected board of directors, so that it was an 'existing' corporation, when it became a party to this suit?"

Again, the law of Ohio requires that 10 per cent. of the capital stock of the proposed corporation shall be subscribed, and this fact certified by the incorporators to the secretary of state, before an election of directors may be held (G. C. §§ 8633, 8635); that, at the time of making a subscription to the capital stock of a corporation, 10 per cent. of each share subscribed for shall be payable (G. C. § 8632); that no person shall vote on a share of stock on which an installment is due and unpaid (G. C. § 8636); that all directors and executive officers of corporations shall be holders of stock of the company for which they are chosen in an amount to be fixed by the by-laws (G. C. § 8661); and that "holders of stock" means bona fide owners of it, as is decided in

Dueber Watch Co. v. Daugherty, 62 Ohio St. 589, 57 N. E. 455, in which a corporation issued a certificate of stock to a citizen of Ohio for the purpose of qualifying him as a director, with the agreement that he should retransfer it upon ceasing to be a director. The court says such a transaction was a fraud upon the law, and contravened the declared policy of the state, if Coburn was intended to be a nominal, and not the real, owner in fact of the stock placed in his name.

That these are not merely directory provisions of law, but are mandatory, and must be complied with before a corporation can come into existence under Ohio law, is sufficiently established by Telephone Co. v. Cincinnati, 73 Ohio St. 64, 76 N. E. 392, which decides that:

"Sections 3243 (G. C. § 8632), 3244 (G. C. § 8633) and 3245 (G. C. § 8636), Revised Statutes, taken together, require that an installment of 10 per cent. on each share of stock shall be payable at the time of making the subscription; that as soon as 10 per cent. of the capital stock is subscribed notice for the election of directors may be given; that no person shall vote for director for any share on which any installment is due and unpaid, and the votes of a majority of the number of shares shall be necessary for a choice. Tested by these requirements, the record shows that there had been no legal election of directors, and that the corporation had not been organized in such manner as to entitle it to a decree under section 3461."

Trust Co. v. Floyd et al., 47 Ohio St. 526, 26 N. E. 110, Syl. par. 3:

"The corporate powers, business, and property of corporations formed for profit must be exercised, conducted, and controlled by a board of directors, who cannot be chosen until 10 per cent. of the capital stock specified in the articles of incorporation has been subscribed."

See, also, City of Cincinnati v. Queen City Tel. Co., 2 O. N. P. (N. S.) 349.

The question we are considering being, "Is the Kardo Company a de jure corporation?" the application of Telephone Co. v. Cincinnati, 73 Ohio St. 64, 76 N. E. 392, is not affected by the fact that this decision proceeds upon the basis of the case under consideration being such a one that the Ohio rule in eminent domain cases was applied; this for the reason that, if the question of the validity of the Kardo organization may properly be raised and decided at all, then the standard for showing the validity of its corporate organization would be the same in one case as in another.

Omitting the five shares subscribed for by the attorneys engaged in organizing the company, 10 per cent. of the proposed capital stock of the company was not subscribed for when the first board of directors was chosen. No new board has been since elected, except that as the first members resigned others were named by the first claimed board of directors to fill their places.

When applying these principles of Ohio law to the facts of the case at bar, it should be kept in mind that no court in this country has been more resolute than the Supreme Court of Ohio has been in looking through corporate forms to the conduct of the associated men who desire or who pretend to constitute a corporation, and in declaring that the fiction that such men constitute a legal entity, apart from the natural persons who compose it, shall not be urged, but shall be disregarded when urged, to an extent and purpose not within the reason and policy

which introduced it for convenience in the transaction of its business and of those who do business with it. State ex rel. v. Standard Oil Co., 49 Ohio St. 137, 30 N. E. 279, 15 L. R. A. 145, 34 Am. St. Rep. 541; Cincinnati Volksblatt Co. v. Hoffmeister, 62 Ohio St. 189, 56 N. E. 1033, 48 L. R. A. 732, 78 Am. St. Rep. 707. In this case last the court says:

"The idea that the corporation is an entity, distinct from the corporators who compose it, has been aptly characterized as 'a nebulous fiction of thought.' * * * When all has been said, it remains that a corporation is not in reality a person or a thing distinct from its constituent parts, and the constituent parts are the stockholders, as much so in essence and in reality as the several partners are the constituent parts of the partnership."

And see Bank v. Trebein, 59 Ohio St. 316, 52 N. E. 834, and Andres v. Morgan, 62 Ohio St. 236, 56 N. E. 875, 78 Am. St. Rep. 712.

Looking now through the forms which the organizers of the Kardo Company cast about themselves, we see five men who never had or intended to have one dollar of interest in the corporation which they were solemnly going through the form of organizing, acting as merest "dummies" in complying with the forms of the Ohio statute, to accomplish by indirection for these corporations, which employed them as attorneys at law, that which they could not accomplish directly for themselves; that neither the signers of the articles of incorporation nor their successors, in name directors of the proposed company, ever had any financial interest whatever in the company, although the Ohio law and even the regulations adopted by the so-called stockholders required that all directors and executive officers of the company must be bona fide owners of at least one share of stock in the company; that, excluding the five shares subscribed for by the lawyers without having any interest in the proposed company, and who never paid anything upon the account of such subscriptions, 10 per cent. of the proposed capital stock was not subscribed for prior to the election in form of a board of directors; that the 10 per cent. which became due and payable on each share subscribed by the organizers was never paid by any one of them, or by their successors, although these men voted these shares, and now claim that they elected a valid board of directors, the election of which was an indispensable prerequisite to the Kardo Company coming into existence as a valid corporation.

Upon this state of facts and of the law, can it be said that the Kardo Company was a lawfully formed and existing de jure corporation under Ohio laws? There was no law in Ohio in 1914 which authorized three corporations to organize a fourth corporation. Yet this is precisely what the American Ball Bearing Company, the Peerless Motor Car Company, and the Packard Motor Car Company attempted to do by going through the forms of organizing the Kardo Company. Not one dollar of money from any source, except from the treasuries of these three companies (indeed, only money from the treasury of the Ball Bearing Company was used for purpose of organization), was applied in payment for Kardo stock, and the men who acted as directors and stockholders were "dummies" in a most perfect sense.

[2, 3] No valid distinction can be drawn between the familiar case

in which an attempted corporate organization is held invalid and void, where there is no law providing for such a corporation as is proposed, and the case where there is no law permitting such promoters as attempt to organize a corporation to do so, even if proper persons might lawfully organize a corporation for the same purpose. Legal infirmity in parties is as fatal as legal infirmity of purpose. Neither can it be soundly said that by the granting of authority to Ohio corporations, within prescribed limits, to lawfully become stockholders in other lawfully organized corporations, there is implied a further grant of power to such Ohio corporations to themselves organize corporations in which they shall own all the stock. The power to own stock in a lawfully organized corporation is too greatly different from the power to create a corporation, and to control it, for the latter to be raised by implication from the former; this without regard to the opportunities for mischief which would be afforded to corporations to divert the corporate capital from the purposes to which it has been devoted, if such an implied power were held to exist. In grants by the public, the general rule of construction is that nothing passes by implication merely. Thompson on Corp. § 304 et seq.

Convinced as I am that not without sheer acceptance of forms and names for realities and facts can this Kardo Company be considered anything but a voluntary association of agents and representatives of the three corporations which conceived the scheme of organizing it, I am clear in the conclusion that there was no lawful authority in Ohio for the creating of a corporation such as the Kardo Company claims to be.

"The modern tendency is to ignore corporate existence in corporations organized merely as a cloak for fraud, and to hold the corporators, including officers and directors, directly liable for its acts. These corporations are usually termed 'dummy corporations.' Concerning them the New York Court of Appeals has said: 'We have of late refused to be always and utterly trammeled by the logic derived from corporate existence where it only serves to distort or hide the truth.'" Thomp. Corp. § 1417.

While there is no disposition on the part of the court to impute actual or intended fraud to the parties engaged in this enterprise, yet the law of the case is not different from what it would be if such were the fact. As was held by the Supreme Court of Ohio in Bank et al. v. Trebein, 59 Ohio St. 316, 52 N. E. 834, Syl. 3:

"The good faith of the parties to such a transaction must be determined by its legal effect on the rights of others. If its legal effect works a fraud on their rights, the finding of a court that the parties acted in good faith is simply an erroneous conclusion of law from the facts."

See Trust Co. v. Floyd, 47 Ohio St. 525, 26 N. E. 110.

It seems to me very clear that the action taken in this case by mere attorneys at law of these three corporations to bring into existence the form and name of a corporation, which they should forthwith abandon to the custody and control of the officers and directors of the three corporations, was a fraud upon the law of Ohio, no difference if every step was taken in utmost good faith by the men engaged in it.

[4, 5] I conclude, therefore, that the plaintiff, the Kardo Company,

was not when it appeared in this suit, and was not when this case was tried, a corporation lawfully organized and existing under Ohio laws:

(a) Because there was no law of Ohio permitting three corporations to combine to organize a fourth corporation to serve their purposes.

(b) Because there was not a bona fide subscription of 10 per cent. of the capital stock of the company, nor a bona fide payment of 10 per cent. of the capital stock of it paid in, when the first election of directors was held, as was required by the law of Ohio.

(c) Because the conditions upon which a corporation may be called into existence are prescribed by Ohio law, and they had not then been complied with. This law contemplates that the action prescribed shall be taken by five natural persons having an actual and real interest, at least to the extent of one share of the capital stock, in the assets and in the welfare of the corporation (Hoopes v. Basic Co., 69 N. J. Eq. 679, 61 Atl. 979), and it would be a reproach upon the law for the courts to put their stamp of approval upon so palpable an evasion of this law of Ohio as this record discloses.

[6] But the case has been argued by counsel for the plaintiff in the alternative, claiming that, even if the Kardo Company is not a lawfully organized corporation (and the payment for stock by the persons acting as directors after the question of its validity was started in this court would seem to imply that in the opinion of counsel it is not a corporation de jure), nevertheless the action proved to have been taken constitutes the company a de facto corporation, competent to come into court and assert a claim to affirmative relief against parties who have never dealt with it.

I shall consider of this claim briefly as I may. There is no doctrine in corporation law which lacks more of precision of definition as to the principles upon which it proceeds, or as to what its boundaries are, than does this doctrine of de facto corporations. Courts have almost always contented themselves with deciding the case in hand, without attempting to formulate the general principle within which it fell, and text-book writers have treated the subject as "a wilderness of single instances," which it was hopeless to attempt to classify under general principles of decision.

The only comprehensive discussion of the doctrine of de facto corporations from the point of view of the principles of law involved with which I am acquainted is one by Prof. Edwin H. Warren, found in Harvard Law Review, volume 20, page 456, and volume 21, page 305, and in order that this opinion may not be extended to an undue length, as it proceeds, I shall adopt several of the conclusions of Prof. Warren, which I think sustained by authority and sound thinking, paraphrasing them only to the extent necessary to apply them to the case at bar.

Persons by their own voluntary action may unite to accomplish any lawful purpose; but it is only union under authority of the state, in the manner prescribed by it, that gives to such a union the privileges of de jure incorporation.

Should such a group of men who fail to comply with the law nevertheless enjoy the privileges of incorporation as if they had complied with it? Should they be permitted to affirmatively assert against a

stranger a privilege or right which they do not possess? The courts have answered this question affirmatively in specific cases, all of which proceed, it is believed, on principles either of estoppel or of public policy. In many cases the two overlap and no line of demarcation is discoverable between them.

These decisions develop the doctrine of de facto corporations, and we have it under our law. It is a doctrine without authority or definition in the English courts, which seemingly allow collateral attack upon corporate organization without resulting confusion or inconvenience.

The Supreme Court of the United States in a condensed generalization of the doctrine makes it applicable only (1) where there is in existence a general law under which such a corporation as the one under consideration purports to be might lawfully be organized; (2) when there has been an attempt in good faith to organize thereunder; and (3) when there has been an actual user of the assumed corporate franchise. Even where these conditions are all fulfilled, the courts allow enjoyment of the corporate franchise, where there is not substantial compliance with the regulations of the state, only where considerations of equitable estoppel or of public policy justify it. Upon one or the other of these grounds the decision of each well-considered case applying the doctrine has found its justification.

In the case at bar the parties never contracted together, so that there is no room for application of the doctrine of estoppel, and the question therefore becomes this, viz.: May the group of men, here attorneys at law of three other corporations, or their successors, who have failed to so comply with the Ohio law as to organize a de jure corporation, apply the de facto doctrine for their own benefit against persons who have never dealt with them as a corporation, and be treated by this court as if they had been lawfully authorized to act as a legal unit? A few principles worked out upon full discussion of the decided cases and upon principle by Prof. Warren seem to me to decide this question in the negative.

It is not for courts to create corporations. Ashley v. Ryan, 153 U. S. 436, 14 Sup. Ct. 865, 38 L. Ed. 773. The franchise to be a corporation can be granted only by the Legislature, and for courts to assume that power is to proclaim themselves de facto legislators in order to create de facto corporations. Judicial lawmaking is a sufficiently active cause of complaint against the courts to deter them from unnecessarily inviting further criticism, especially just criticism.

When there is a law under which a corporation might be lawfully organized, and an attempt in good faith is made to organize thereunder, and there is an actual user of the corporate franchise (Tulare Irrigation District v. Shepard, 185 U. S. 1, 22 Sup. Ct. 531, 46 L. Ed. 773), the de facto doctrine will be applied, where the parties to be charged have contracted with the claimed corporation, or where it acts as a conduit for a title to real estate (Society Perun v. Cleveland, 43 Ohio St. 481, 3 N. E. 357), or where the alleged corporation is made defendant in an action in tort. It is believed the well-considered cases do not go beyond the limits thus stated. But such applications

of the doctrine all proceed, as we have said, only on principles of equitable estoppel or of public policy.

It is true that Baltimore, etc., R. R. Co. v. Fifth Baptist Church, 137 U. S. 568, 11 Sup. Ct. 185, 34 L. Ed. 784, seems in a single expression to go farther than the limits thus stated, saying that the facts in that case constituted the plaintiff in error a corporation de facto, "which was all that was necessary to maintain an action against any one, other than the state, who has contracted with the corporation, or *who has done it a wrong.*" But the case called for no such holding, and not one of the cases cited as authority for it involves any question of affirmative seeking of relief by a de facto corporation. If the expression had been "or who has been wronged by it,". it would have been pertinent to the case under discussion, and would have been justified by authority. Perhaps this is what the writer intended to say.

The doctrine that the existence of a corporation may not be attacked collaterally is often assumed to be the protection, and also the measure of the rights, of a de facto corporation. But this doctrine cannot properly be used to support the application, to such a case as the one at bar, of the proposition that, if certain persons assume to act as a corporation, all but the state must submit to their usurpation of right. We are dealing with a case where the court finds there is no de jure corporation, because there was no Ohio law under which such parties as attempted to organize the Kardo Company could lawfully become incorporated, and also because, under the construction placed upon the Ohio Statutes by the Supreme Court of that state, there was a failure to perform certain legislative conditions indispensably precedent to the calling into existence of a corporation. For these reasons the case does not fall within the scope of the doctrine as quoted herein from the decision of the Supreme Court of the United States.

I cannot think that any inconvenience there may be in investigating the validity and regularity of the corporate organization of the party plaintiff is a consideration of public policy (no other can exist in the case) of sufficient weight to justify courts in granting to persons who have failed to comply with the law substantially all of the rights which they would have had if they had complied with it. Ohio courts have not found this difficulty insuperable, in a suit by a de facto corporation on a subscription to its stock (Raccoon River Co. v. Eagle, 29 Ohio St. 238), or in eminent domain cases (contrary to the general current of opinion), and generally the doctrine has not been applied where it can be proved that no law existed under which such a corporation as the pretended one could have been organized, or where there was a failure to create a de jure corporation because of lack of good faith (185 U. S. 1, 22 Sup. Ct. 531, 46 L. Ed. 773, supra).

Without going more into detail, the Kardo Company, having failed to become a de jure corporation for the reasons in this opinion stated, and having special regard to attitude of Ohio courts towards the fiction of corporate entity, and their refusal to apply the de facto doctrine in many cases in which courts of other states have applied it, I agree with the well worked out conclusion of Prof. Warren that

there is no principle of public policy and no established doctrine of law requiring that, under such facts as this case presents, if a group of men not invested with corporate privilege assume to exercise it, strangers to them must submit to their usurpation of right until the state sees fit to question it, and that therefore the Kardo Company cannot maintain this suit under the de facto doctrine. It is a doctrine to be used as a shield, but not as a sword.

[7] It is further contended that the question as to the capacity of the Kardo Company to maintain this suit cannot be raised and decided by this court, because it is not made by the pleadings in the case. It is enough to say that this is a suit in equity to which both section 37 of the Judicial Code (Act March 3, 1911, c. 231, 36 Stat. 1098 [U. S. Comp. St. 1913, § 1019]) and rule 37 of the new equity rules of 1912 (198 Fed. xxviii, 115 C. C. A. xxviii) are applicable, and that under the authority of these, as well as under the general authority of, a court to prevent imposition upon its jurisdiction, I have no doubt that it is within the power, and that it is the duty, of this court when it believes, as I believe in this case, that a plaintiff is without legal capacity to maintain a suit before it to proceed no further therein, but to dismiss the case. I cannot assent to the conclusion that a court is so bound by rules of practice that it must enter a judgment in favor of or against a corporate name which it believes has no right in court, either as a corporation de jure or de facto, simply because the parties to the cause may not have made the validity of the corporate powers of the plaintiff an issue by their pleadings.

For the reasons herein stated, I find that the Kardo Company has not legal capacity to maintain this action, and the suit will be dismissed.