## Altaffer et ux., Appellants, *v.* Anderson Automobile Company et al.

*Equity—Injunctions — Issue of stock certificate — Ownership — Evidence—Findings of fact by chancellor—Review by appellate court.*

The findings of fact by a judge sitting as chancellor will not be disturbed on appeal, except for clear or manifest error. But when such finding of fact by the chancellor is really an inference or deduction from other facts and the conclusion thereof is the

result of reasoning, it is subject to revision and correction by the appellate court, if such conclusion is erroneous. Such findings of fact are not absolutely conclusive upon the appellate court but will be set aside if error clearly appears.

On a bill in equity to compel the issue of a new certificate of one share of stock and enjoin the holding of the stockholders' meeting until after the certificate has been issued, a decree dismissing the bill will be reversed, where it appeared from the evidence that the plaintiff had purchased one-half of the stock in the corporation and that the share of stock in question had been held in the name of a third party, although it really belonged to the vendor of the plaintiff. In such case, a finding of the court below that the share of stock was owned by the third party, when such conclusion is not supported by the evidence is erroneous and, the decree dismissing the bill will be reversed, and the record will be remitted with directions to enter a decree, requiring the issue of the certificate to the plaintiff.

Argued April 27, 1921. Appeal, No. 126, April T., 1921, by plaintiffs, from decree of C. P. Allegheny County, Jan. T., 1920, No. 562, sitting in equity, in the case of Addison S. Altaffer and Mary E. Altaffer v. Anderson Automobile Company, a corporation, R. L. Anderson and John C. Anderson. Before ORLADY, P. J., PORTER, HENDERSON, HEAD, TREXLER, KELLER and LINN, JJ. Reversed.

Bill in equity to compel the issue of a new certificate of one share of stock, and to enjoin the holding of a stock-holders' meeting until said certificate has been issued. Before FORD, J.

The facts are stated in the opinion of the Superior Court.

The court dismissed the bill. Plaintiff appealed.

*Errors assigned* were overruling exceptions to certain findings of fact and conclusions of law, and the decree of the court.

*William A. Wilson,* of *Calvert, Thompson and Wilson,* for appellants.

*Joseph W. Walters,* for appellees.

OPINION BY KELLER, J., July 14, 1921:

This bill was filed to compel the issue of a new certificate for one share of stock of the defendant company, and enjoin the holding of the stockholders' meeting until after the said certificate had been issued and could be voted on. The right to such a decree rests upon the extent of the holdings which D. C. Anderson had in the defendant company's stock at the time he sold his interest therein to the plaintiff, Addison S. Altaffer. It is admitted that D. C. Anderson sold his entire interest in the company to Altaffer; if, then, the share in controversy belonged to him at the time of such sale, it passed to his transferee, Altaffer, and the latter had a right to have a new certificate issued to him or his nominee.

The court below found that the share of stock in question was owned by John C. Anderson, one of the defendants and father of D. C. Anderson, and dismissed the bill.

The appellee relies upon the well settled rule that the findings of fact of a judge sitting as a chancellor will not be disturbed on appeal except for clear or manifest error.

This rule, however, has long been qualified to the extent that when the judgment of the court below is based upon an inference or deduction from other facts, the conclusion, being the result of reasoning, is subject to revision and correction by an appellate court, if erroneous: Woodward v. Carson, 208 Pa. 144; Commonwealth T. I. & Trust Co. v. Seltzer, 227 Pa. 410, p. 416; Phillips's App., 68 Pa. 130, p. 138; Babcock v. Day, 104 Pa. 4, p. 7; Del. & Atl. Teleg. & Tel. Co.'s License Fees, 37 Pa. Superior Ct. 151, p. 156. Such findings are not absolutely conclusive upon us, but will be set aside if error clearly appears: Worrall's App., 110 Pa. 349, p. 362; Stockett v. Ryan, 176 Pa. 71, p. 80. In the late case of McConville v. Ingham, 268 Pa. 507, our Supreme Court, Mr. Justice

SIMPSON delivering the opinion, said: "We are not unmindful of the fact that the court below has found, as a conclusion of law, that 'The checks for $28,456.79 and $414.89, were endorsed and delivered to Martha Jane Ingham [defendant] as voluntary gifts, so intended by Martha McConville [plaintiff] and so received by Martha Jane Ingham'; but, as shown above, this legal result is reached by an inference founded on an erroneous conclusion regarding vital facts, and by misapplying legal principles; and this brings the case squarely within the rule stated in Worrall's App., 110 Pa. 349, 362, later quoted in Bergner v. Bergner, 219 Pa. 113, 116: 'The defendant refers to the rule that, except for plain mistake, this court will not set aside the master's finding of fact, especially when that finding has been confirmed by the court below. In a suit in equity the finding of a master is not conclusive, as is the verdict of a jury in a trial at law. Upon exceptions to the master's findings of fact the court of original jurisdiction is bound to examine the evidence and determine what are the facts. Whether that court agrees or disagrees with the master's findings, on appeal, the appellate court should in like manner determine if the facts have been rightly found. When the appellate court is satisfied that facts have been found without proof, or material facts established by the proofs have not been found, it follows that there has been plain mistake. In the several stages of the proceeding there is no place for a perfunctory consideration of the evidence relative to facts in dispute.'" (pp. 519-20.)

Now, ownership of a thing is not a pure question of fact. It is a mixed question of fact and law, an inference or conclusion drawn from facts. In the very recent case of Phila. v. Schaefer, 269 Pa. 550, the Supreme Court, speaking through Mr. Justice SADLER, said: "The mere statement of a conclusion of nonownership is, however, insufficient, unless there be alleged the premises upon which this inference rests." p. 554. And the same

thought was expressed by Judge HEAD, in our own case of Carr v. Hughes, 71 Pa. Superior Ct. 412: "The affiant first contents himself with a general denial that the said Donnelly ever was the owner of the said property...... No fact is averred from which a court could determine that if the same were established by proof the conclusion to which the defendant swears would follow."

In the present case there is little or no dispute as to the basic facts upon which the ownership of the share of stock in suit depends. The Edgeworth Machine Company was a partnership composed of D. C. Anderson and R. L. Anderson, each owning a half interest. The business, including all its property and assets, was valued at $20,000. The defendant, Anderson Automobile Company, is a Pennsylvania corporation organized in August, 1910, to take over the business of the Edgeworth Machine Company; it has a full paid capital stock of $20,000 divided into 200 shares of a par value of $100 each. The original subscribers to the certificate of incorporation were John C. Anderson, (father of D. C. and R. L. Anderson) 198 shares; Harold Allen, 1 share; and R. R. Frank, 1 share. To carry out the purpose of its organization, the parties apparently went through the form of giving the corporation's check for $20,000 to the partnership to purchase all the latter's business, property and assets, and the partnership gave John C. Anderson its check for $2,000 and $18,000, respectively, for the stock of the corporation; the first check being used either to furnish the ten per cent cash payment required for incorporation, or to reimburse John C. Anderson, who seems to have advanced it temporarily. In this way the assets of the partnership became the property of the corporation and the members of the partnership became entitled to the capital stock of the corporation. The corporation had no assets except the property and assets turned over to it by the members of the partnership. No certificates of stock had been issued to the original subscribers, but to effectuate the transfer of the

business of the partnership to the corporation, John C. Anderson apparently assigned 98 shares of the stock subscribed for by him to each of his sons, Allen transferred his one share to D. C. Anderson, and Frank transferred his one share to R. L. Anderson; certificate of stock No. 1 for 99 shares was issued to D. C. Anderson; certificate No. 2 for 99 shares was issued to R. L. Anderson; the remaining 2 shares of stock were issued in the form of two certificates (Nos. 3 and 4), for 1 share each, in the name of John C. Anderson, who receipted for them but at once signed the transfer and power of attorney on the back of the certificates in blank and left them in the stock certificate book with the other 198 shares issued to the two partners.   The charter of the corporation called for three directors, all of whom had to be stockholders.

In September, 1911, D. C. Anderson sold his entire interest in the corporation to the plaintiff, Addison S. Altaffer, who became a director and secretary and treasurer of the corporation, while R. L. Anderson was made its president.   Altaffer testified that prior to the purchase he asked R. L. Anderson, who was acting for his brother in the matter, how many shares D. C. Anderson held, and was told 100; and that he wanted $75 a share for it; that one share belonging to each brother was standing in the name of their father, John C. Anderson, to qualify him as a director.   R. L. Anderson did not deny that he had made this statement.   The conversation did not occur in the presence of John C. Anderson, and, of course, it would not conclude him if he were the real owner of the stock.   A certificate for 99 shares was issued to Altaffer on payment of the $7,500, the other share remaining as before mentioned.   The business was conducted by R. L. Anderson and Altaffer without any formal meetings or elections until 1919; no dividends were paid but R. L. Anderson and Altaffer each drew a salary of $6,000 per year; the bonus paid to the corporation as distributors of Buick cars was divided between

them equally, and a dividend from some stock purchased from the corporate funds was likewise divided between the two.

About four years after his purchase, Altaffer took certificate No. 4 for 1 share, issued in the name of John C. Anderson but endorsed by him and left in the certificate book, and put it in his safe deposit box, and R. L. Anderson took the other certificate, No. 3, and put it with his papers.

In 1919 some trouble having arisen between Altaffer and R. L. Anderson, the former cancelled certificate No. 4 for 1 share and pasted it in the stock book, made out a new certificate therefor in favor of his wife, the other plaintiff, signed it as treasurer and sealed it, and presented it to R. L. Anderson as president for his signature. The latter refused to sign it and·subsequently his father, John C. Anderson, made demand that both certificates, (Nos. 3 and 4) should be delivered to him as his property. Pursuant to this demand, R. L. Anderson took the cancelled certificate No. 4, as well as certificate No. 3, in his possession and gave them to his father, who retained them for a few days and then gave them back to R. L. Anderson, who has since been in possession of them. Subsequently R. L. Anderson called a meeting of the stockholders, the first meeting held since the corporation was organized, for the purpose of electing directors, and the filing of this bill followed.

It follows from the above that if certificate No. 4, though standing in the name of John C. Anderson, was in September, 1911, really the property of D. C. Anderson, the plaintiff was entitled to have a new certificate therefor issued to his wife and the relief prayed for in the bill should have been granted by the court.

In passing upon the question involved in this appeal, it is well to keep in mind the object for which the corporation was formed, which was to take over or incorporate the business of the Edgeworth Machine Company. The capital stock of the corporation was fixed at the ex-

act amount at which the business and assets of the partnership were valued. Whatever money John C. Anderson put into the corporation, either by way of the initial ten per cent required to be paid in cash or to purchase the business and assets of the partnership for the corporation, was all paid back to him. In fact, the transaction amounted to nothing more than an exchange of checks between the corporation and the partnership, if the partnership did not actually advance the first payment made by him. The corporation had no assets or property but what was furnished by the two members of the partnership, and by the checks aggregating $20,-000 which the partnership gave to John C. Anderson they paid for all the stock. Under the charter it was necessary that there should be three directors and that all three of them should be stockholders, and for this purpose some stock had to stand in the name of a third person. It is significant that the two shares issued to John C. Anderson were made out in two certificates instead of one and that he immediately endorsed them and left them with the other certificates belonging to his two sons. "A certificate of stock is generally assigned by the owners signing a blank transfer and power of attorney on the back of the certificate. The transfer gives title to him whose name is afterwards filled in the blank transfer thus signed": Cook on Stock and Stockholders, section 441. "The assignment of a certificate of stock with power of attorney to have it transferred on the books of the company gives to the assignee the status of a legal owner of the stock. It conforms to the practice and general understanding of the commercial world": Dueber Watch Case Co. v. Daugherty, 62 Ohio St. 589, 57 N. E. 455.

Neither John C. Anderson nor R. L. Anderson could explain why certificates Nos. 3 and 4 issued in the name of John C. Anderson were immediately assigned by him in blank and left with his sons' stock unless in compliance with this general practice of the commercial world.

John C. Anderson testified that no stock belonging to him in other companies was thus transferred by him in blank, or left in the office of the corporation, and neither of the certificates, Nos. 1 or 2, issued to the two partners were assigned by them in blank. John C. Anderson did not allege that the stock had been given to him by either of the partners. R. L. Anderson emphatically denied it; D. C. Anderson, a witness called by the defendants, at first thought he had given the stock to his father, but afterwards qualified his answer, refused to so testify and did not know how his father became the owner unless he got it from the attorney at the organization of the corporation. No one contended that he had bought it from his sons. The testimony of R. L. Anderson was clear and distinct that after the transfer had been effected the corporation possessed no assets or property except what had previously belonged to the partnership and that the partnership had paid back to John C. Anderson every dollar that he advanced or put into the corporation for the purpose of organization. John C. Anderson himself could not explain how he became the owner of the two shares standing in his name beyond the fact that it had been so arranged by the attorney employed to organize the company.

It is well settled that though stock may stand in the name of one person, the real or beneficial ownership thereof may be shown to be in another: Reinhardt v. Interstate Tel. Co., 71 N. J. Eq. 70, 63 Atl. 1097; O'Connor v. Int. Silver Co., 68 N. J. Eq. 67, 59 Atl. 321, affirmed by court of appeals, 62 Atl. 408; Hoopes v. Basic Co., 69 N. J. Eq. 679, 61 Atl. 979; and when the latter presents the certificate of stock assigned in blank he is entitled to have a new certificate issued to him or his nominee.

We have gone carefully over all the evidence and are unable to agree with the finding and conclusion of the court below that John C. Anderson was the real or bene-

ficial owner of certificate No. 4 for one share. The evidence convinces us that R. L. Anderson and D. C. Anderson by virtue of the organization of the company and the transfer of the assets of the partnership to it became the real and beneficial owners of all the capital stock of the corporation; that two shares in the form of two certificates for one share each were left in the name of their father in order to comply technically with the requirements of the charter that the directors had to be stockholders; that John C. Anderson assigned these two certificates in blank, and in effect delivered them to his two sons, (6 Fletcher Cyc. Corp. Sec. 3785, p. 6312), in order that they might enjoy the real ownership of them though standing in his name; that thereafter R. L. Anderson and D. C. Anderson, and his assignee, the plaintiff Altaffer, with the full acquiescence of the defendant, John C. Anderson, managed and conducted the business as if it were jointly owned by the two of them in equal shares, (which did not change the status of the corporation: Einstein v. Rosenfeld, 38 N. J. Eq. 309; Sternberg v. Wolf, 56 N. J. Eq. 555, 42 Atl. 1078; Jackson v. Hooper, 76 N. J. Eq. 592, 75 Atl. 568), and that John C. Anderson's subsequent action in demanding the delivery to him of the two certificates was instigated by his son, R. L. Anderson, for the sole purpose of depriving Altaffer of an equal voice in the control and management of the corporation. While John C. Anderson was a stockholder of record he was not the real owner of the stock standing in his name.

The second and third assignments of error are sustained; the decree of the court below is reversed and the record is remitted with directions to enter a decree as prayed for in the plaintiffs' bill; the costs in the court below and in this court to be paid by the appellee, R. L. Anderson.