HERMAN MERRELL, *Appellant,* v. CITY OF ST. PETERSBURG, A MUNICIPAL CORPORATION, *Appellee.*

Opinion Filed October 23, 1917.

1. The question of whether or not there was irregularity in the organization of a municipality cannot be determined when such question is presented in a collateral attack upon such organization.

2. In proceedings brought under the provisions of Chapter 6868, Laws 'of Florida, to validate bonds issued or to be issued by a municipal corporation, the question whether or not there was irregularity in the organization of such municipality is not a proper subject of enquiry.

3. Upon the showing made in this case, it does not appear that the property intended to be purchased by the city is not for a valid municipal purpose.

4. The rule is that when a municipality is duly authorized to exercise a particular municipal function and the manner of the exercise of the authority is not defined by statute, but is left to the city council, the courts will not undertake to control the manner of the exercise of the authority by the city council when no applicable rule of law is violated and the authority is not exceeded or abused.

Appeal from Circuit Court for Pinellas County, O. K. Reaves, Judge.

Decree affirmed.

*Herman Merrell,* for Appellant;

*Lane & Dishman* and *Bayard S. Cook,* for Appellee.

WEST, J.—Pursuant to the provisions of Chapter 6868 Laws of Florida, the appellee, the City of St. Petersburg, filed its petition in the Circuit Court of the Sixth Judicial Circuit praying for the validation and confirmation of certain bonds of said city amounting to $180,000 issued or to be issued for the purpose of securing the funds necessary for various public improvements and for the purchase of certain lots of land in said city to be used, as it is alleged, for municipal purposes.

The petition alleges in detail the various steps taken in the proceedings of the city commissioners and other officers looking to the issue of said bonds, and has attached thereto as exhibits a copy of the ordinance passed by the Board of Commissioners of the city providing for said bond issue, with proof of its publication, a copy of the notice of the election held for the purpose of submitting to the qualified voters of the city the question of whether or not the municipality should be authorized and

empowered to issue such bonds, with proof of its publication, a copy of the ballot used in such election, together with other exhibits showing the actions taken by the municipal officers in the conduct of such election.

It is recited in the decree of the Circuit Judge from which this appeal is taken validating and confirming said bonds, that the State of Florida through the State Attorney, had filed an answer to said petition confessing the legality of said bond issue.

The appellant as a citizen, an owner of real estate and tax-payer of the City of St. Petersburg, filed his petition in said cause praying that he be permitted to intervene and become a party defendant and that his petition be received and considered as his answer to the petition.

In this petition, which was regarded as an answer in the court below, appellant raises no question about the regularity of the proceedings by said city or its representatives relative to said bond issue, but he says in the first place, that the prayer of the petition to validate said bonds should not be granted because the City of St. Petersburg is not a legally organized municipality, and therefore has no authority to exercise the powers of a municipal corporation. Upon motion this portion of the answer was stricken, and the action of the court below on this motion is the ground for the first assignment of error.

It is averred in the answer that said city undertook to secure a new charter under the provisions of Chapter 6940 Acts of 1915, Laws of Florida, but that such undertaking was never completed and such new charter never became effective because no copy of the proposed charter was recorded in the office of the Clerk of the Circuit Court as required by section thirteen (13) of said statute. In a stipulation filed by counsel for the respective parties in

the court below, the following paragraph on this subject appears: "It is further stipulated and agreed that said charter was duly recorded in the office of the Secretary of State February 26, 1916, in Book 1, of 'Municipal Charters,' and that said charter was recorded in 'Corporation Record No. 1, on pages 263 to 285 inclusive' in the office of the Clerk of the Circuit Court of Pinellas County, Florida, but not in any other book in said office." Even if this does not show a full compliance with the terms of the statute, which is not conceded, the holding of the court below was right for the reason that the question of whether or not there was irregularity in the organization of the municipality cannot be determined in a collateral attack of this character. Town of Enterprise v. State, 29 Fla. 128, 10 South. Rep. 740.

It is next urged that the bonds should not be validated because certain of the proceeds amounting to $12,000 are to be used in the purchase of certain lots of land in said city not intended to be used for any lawful municipal purpose, nor to supply any need or requirement of said city, but for the purpose of assisting certain citizens of said city who bought said lots with others for the purpose of assisting in the building of a railroad, etc.

From the stipulation of counsel above referred to it appears that among the charter powers of the city is the following. "To acquire by purchase, condemnation or otherwise, take, hold, lease, sell, grant, convey and incumber such real and personal or mixed property or interest therein, whether located within or without the limits of the city as may be necessary or convenient for the purposes of the city." The court below heard evidence on this point and upon the proof submitted held that appellant's contention was not sustained, the learned Circuit Judge saying in his opinion: "From the evidence, I find that

the purchase of said seventeen lots referred to as trackage property was intended and designed in good faith for the present and prospective needs of the city in the discharge of its proper municipal functions. I am unable to agree that it is necessary for the city to show an immediate need for all this property. Certainly it is the part of wisdom and within the law for the city to anticipate its needs and to make reasonable provisions for its prospective requirements as well as its present demands, and the purchase of the lots in question aggregating an area of slightly more than two acres of trackage property is not unreasonable and cannot be said to be an abuse of power."

We have examined the evidence submitted at this hearing, and in our opinion there was no error in this holding.

It was further urged that certain of the bonds aggregating $133,000 in amount are illegal and should not be validated because, it is said, in the ordinance, the notice of the election and the ballot used in the election there was embraced in this amount several distinct purposes for which the moneys derived from the sale of such bonds should be used not related to nor dependent upon each other. This proposition as it appears on the ballot used in the election is in the following form:

"$133,000 for the improvement of south side pier; for the improvement of certain parts of the city water front, including the completion of Bayboro harbor; for paving of streets and street crossings; for the purchase of the south half (S ½) of Water Lot nine (9) and Water Lots ten (10), eleven (11) and twelve (12) of said city; for the purchase of the south 140 feet of the north 150 feet of Water Lot No. 4 in said city."

From the evidence before him the court below held that this statement covered one project, namely the consummation and completion of the water front scheme which

the city has been pursuing for several years, and upon which large sums of money have already been expended. The contention however seems to be that because the voter was not given an opportunity to consider each object for which or item upon which the moneys derived from the sale of such bonds was to be used severally, and without regard to any other object or item, howsoever related they might appear to be, and that although the question as submitted has been ratified by the qualified electors of the city, still the bonds are not valid obligations of the city, and should not be validated by the court because the city had no power to conduct the election in this way.

The power and authority of the city on this subject is expressed in the following charter provision: "The city shall have the right to issue and sell bonds for municipal improvements of every nature and kind, not to exceed in amount twelve and one-half per cent. of the assessed value of all the property subject to taxation within the corporate limits of the city; but no bonds shall be issued or sold until such issue be ratified by a majority of the qualified electors of the city who own real estate therein, at an election to be held for such purpose and in such manner as may be provided by the Board of Commissioners."

It will be noted that under this charter provision elections required to be held for the purpose of ratifying bond issues of said city are to be held "in such manner as may be provided by the Board of Commissioners." The rule is that "when a municipality is duly authorized to exercise a particular municipal function and the manner of the exercise of the authority is not defined by statute, but is left to the City Council, the courts will not undertake to control the manner of the exercise of the authority by the City Council when no applicable rule of law is violated and the authority is not exceeded or abused." Perry v.

Town of Panama City, 67 Fla. 285, 65 South. Rep. 6.

If as was held by this court in the case of Middleton v. City of St. Augustine, 42 Fla. 287, 29 South. Rep. 421, power may be conferred upon a municipal corporation in this State to issue bonds, for a lawful municipal purpose, without first submitting the question of the issue of such bonds to the voters of the municipality for their sanction and ratification, it cannot be successfully contended that an election held by a municipality in this State for the purpose of submitting such a question to the voters of the city is invalid and of no effect when it appears that it was held and conducted pursuant to charter power such as the City of St. Petersburg has, and no charge of fraud or unfairness in the conduct of such election is alleged.

It does not appear from the record in this case that the authority conferred by the quoted charter provision has been abused in such a way as to warrant the interposition of judicial authority, nor that any applicable principle of law has been violated.

The decree will be affirmed.

BROWNE, C. J., AND TAYLOR, WHITFIELD AND ELLIS, J. J., concur.