### GREENE et al. v. UNIACKE. *
### No. 5877.

Circuit Court of Appeals, Fifth Circuit.
Feb. 18, 1931.

*Certiorari denied 51 S. Ct. —, 75 L. Ed. —.

Henry Elliot Williams, of Tampa, Fla., and George C. Bedell, of Jacksonville, Fla., for appellants.

P. O. Knight, C. Fred Thompson, and A. G. Turner, all of Tampa, Fla., and David M. Wood, of New York City (Knight, Thompson & Turner, of Tampa, Fla., and Thomson, Wood & Hoffman, of New York City, on the brief), for appellee.

Before BRYAN, FOSTER, and WALKER, Circuit Judges.

WALKER, Circuit Judge.

This is an appeal from an interlocutory decree denying a motion for a temporary injunction restraining the further prosecution of a suit brought by the appellee against Southwest Tampa storm sewer drainage district to collect an amount alleged to be due under the terms of written instruments purporting to be bonds of that district. That decree followed a hearing upon the amended bill and a motion for a temporary injunction. Appellants' amended bill shows that the asserted right to the relief sought was based upon the grounds that appellee was bound by a decree in a suit previously brought by appellants against J. M. Burnett, as tax collector of the county of Hillsboro, state of Florida, and others, which adjudged that all bonds purporting to have been issued by Southwest Tampa storm sewer drainage district are contrary to law, invalid, null, and void, and that all proceedings had or taken for the validation of said bonds, or any of them, are contrary to law, invalid, null, and void, and that, whether the last-mentioned decree was or was not binding on the appellee, the organization of the Interbay drainage district, the name of which was changed to Southwest Tampa storm sewer drainage district (herein referred to as the drainage district), and all proceedings had or taken for the levy of taxes for the purposes of said district, and for the assessment of benefits in pursuance of the purposes of said district, and all bonds and obligations purporting to have been issued by that district, and all proceedings had or taken for the validation of said bonds, were, by reason of alleged defects and irregularities, contrary to law, invalid, null, and void.

Allegations of appellants' amended bill show that the above-mentioned decree in a former suit was rendered in a suit brought in a Florida state court by the appellants, claiming to be the owners of lands which were included in the lands which, under the proceedings taken for the organization of the drainage district mentioned, purported to comprise that district, against named defendants, not including appellee or any bondholder by name, and "all unknown persons claiming any right, title, interest in or claim upon any lands in the bill of complaint described as owners or holders or otherwise interested in bonds issued by Interbay Drainage District or Southwest Tampa Storm Sewer Drainage District"; that, pursuant to an order made in that suit, by publication in a newspaper notice was given "to all unknown persons, claiming any right, title, interest in or claim upon" described lands comprising said drainage district "as owners or holders of, or otherwise interested in, any bonds issued by" that District, requiring them to appear to the bill filed in that cause at a time

and place named, "otherwise decrees pro confesso will be entered against you as provided by law"; and that, so far as the final decree rendered in that case was against persons not named as defendants in the bill therein, it was based on a decree pro confesso entered "against all unknown persons claiming any right, title, interests in or claim upon" described lands comprising that district, "as owners or holders of, or otherwise interested in, any bonds issued by Interbay Drainage District or Southwest Tampa Storm Sewer Drainage District." That suit was brought under a Florida statute which deals with the subject of suits to quiet title to real estate by removing clouds thereon. Compiled General Statutes of Florida 1927, § 5010 et seq. That statute, in addition to authorizing that remedy where there are states of fact plainly not disclosed in the instant case, provides for that remedy "wherever a person or corporation, not the rightful owner of any real estate shall have any conveyance or other evidence of title thereto, * * * which may cast a cloud, doubt or suspicion on the title of the real owner," and provides for the giving of a prescribed notice "where the bill shall show parties interested who are unknown to the complainant and that he has made diligent search and inquiry for their names and could not obtain them." Sections 5011, 5012. That statute does not authorize a suit or proceeding against unknown defendants to quiet complainant's title by removing a cloud, the nature and existence of which are wholly unknown.

For the bill to be maintainable against unknown defendants, its allegations must show the assertion or existence, actual, apparent or potential, of a hostile title or claim of unknown defendants, and its apparent invalidity or inferiority to the title of the complainant. A bill seeking only to remove a cloud, the nature and existence of which are wholly unknown, as against defendants who also are wholly unknown, does not present a justiciable matter under the statute. McDaniel v. McElvy, 91 Fla. 770, 108 So. 820, 830, 51 A. L. R. 731. The allegations of appellants' bill do not show that any unknown person or corporation, not the owner of real estate included in the drainage district, has any conveyance or other evidence of title thereto which may cast a cloud, doubt or suspicion on the title of the real owner. It does not show that at or prior to the date of the bringing of this suit appellee, or his predecessor in the ownership of the instruments sued on, had any relation to the drainage district other than that resulting from the fact that he, or one under whom he claims, was the owner or holder of instruments purporting to be bonds of that district upon which appellee had brought suit against that district. The claim that unknown holders of bonds of that district could be bound by the above-mentioned previously rendered decree seems to be based on the circumstances that the Florida statute under which that district purported to have been organized makes drainage taxes levied as provided for liens on the lands against which such taxes are levied, and authorizes the holders of bonds or notes of such district to bring suit for the collection of such taxes when delinquent, in case said district shall fail to commence suit within a prescribed time after such taxes become delinquent. Compiled General Statutes of Florida 1927 Annotated, §§ 1472, 1473. That statute (Id. § 1451 et seq.) makes a drainage district organized pursuant to its provisions a public corporation of the state of Florida, provides for the governing body of such corporation levying taxes upon lands within such district, makes such taxes liens upon the lands against which they are levied, provides for the governing body of the district instituting suits in its corporate name for the collection of such taxes or assessments, and provides for lands offered for sale under a decree in such a suit becoming the property of the district if the amount of the tax due, interest, costs, and penalty, is not bid for the same.

It is plain from the terms of the statute that the liens provided for are vested in the district, not in the holders of its bonds or notes, and that holders of bonds in bringing suits authorized to be brought by them in case of a district's default in failing to bring suit for the collection of delinquent taxes are not enforcing liens or interests in lands conferred on or possessed by themselves. The existence of appellee's claim to a right of action based on instruments purporting to be bonds of the drainage district did not constitute possession by him of evidence of title to land comprised in that district, or the assertion of a claim by him that he had any title, estate, or interest in such land. The allegations of the amended bill do not show that appellee had any conveyance or asserted any claim which rendered him, or a prior holder of the instruments sued on, subject to be made a defendant to the above-mentioned former suit by proceedings therein based on notice by publication to unknown persons. The statute under which such former suit was brought does not purport to give to a de-

cree rendered therein the effect of barring the institution or prosecution of an action against a party to that suit on a demand for money claimed to exist in favor of one not a party thereto or served with process therein. Bonds of a drainage district, like bonds of a county, may be collectible only by the holder thereof instituting proceedings to bring about the enforcement of liens on lands for taxes applicable to the payment of such bonds. In the one case no more than in the other does one's possession or ownership of bonds, prior to the rendition of judgment in his favor, put him in the position of having or claiming an interest or estate in the lands upon which liens in favor of the debtor are created. We conclude that appellee was not a party to the above-mentioned former suit, and was not bound by the decree rendered therein.

█ In anticipation of a defense based on decrees purporting to validate two issues of bonds of the drainage district, the amended bill contains allegations challenging the validity of those decrees, copies of which are made exhibits to the amended bill. A Florida statute in force at and prior to the dates of the just mentioned decrees provided that, "when any county, municipality, taxing district, or other political district or subdivision shall adopt any ordinance or resolution, or take any other action required by law, for incurring any bonded debt or issuing certificates of indebtedness under the laws of this State, such county, municipality, taxing district, or other political district or subdivision shall have the right, if it deems it expedient, to determine its authority to incur bonded debt or to issue certificates of indebtedness and the legality of all proceedings had or taken in connection therewith, by filing a petition against the State of Florida in the circuit court of the county in which such * * * proceedings have been had or taken." Revised General Statutes of Florida 1920, § 3296. For the appellants it was contended that a drainage district is not within the terms of the just set out provision. This contention is not sustainable if a drainage district organized pursuant to the Florida statute is a "taxing district," as the statute specifically provides for the validation of bonds of a taxing district. A drainage district organized under the Florida statute is a public corporation vested with power to levy taxes which are enforced contributions for the payment of public expenses. It possesses the essential features of a taxing district, and is such an organization or legal entity as is commonly called a "taxing district." Kansas City Southern Ry. Co. v. Road Imp. Dist.

No. 6, 256 U. S. 658, 41 S. Ct. 604, 65 L. Ed. 1151; Houck v. Little River District, 239 U. S. 254, 36 S. Ct. 58, 60 L. Ed. 266; Stewart v. De Land-Lake Helen Special Road & Bridge Dist., 71 Fla. 158, 71 So. 42. A drainage district, being a "taxing district," is within the terms of the above set out provision. Furthermore, the drainage district is included in the class described by the words "or other political district or subdivision," as it consists of a contiguous body of wet or overflowed lands, organized for the purpose of carrying out a public policy with reference to the reclamation or improvement of such lands.

█ It was suggested that the purported bonds issued by the drainage district were not within the terms of the decrees validating the issue and sale of bonds of that district, because by the terms of the bonds issued both principal and interest thereof in stated amounts of dollars were made payable "in gold coin of the United States of the present standard of weight and fineness," while the validating decrees authorized that district to issue and sell bonds for stated amounts in dollars. The bonds issued evidenced promises to pay principal and interest in amounts of dollars stated in the validating decrees. There was no variance between the bonds issued and those authorized to be sold and issued except that the former contained the quoted provisions as to payment in gold coin of stated weight and fineness, while the latter did not provide for bonds having that feature. Only that feature of the issued bonds properly could be regarded as unauthorized. The result of that provision of the issued bonds being unenforceable would not be to render those bonds unenforceable in so far as the provisions thereof were legally authorized. An effect of the quoted provision of the issued bonds being adjudged to be invalid in a suit thereon would be that a judgment in favor of the plaintiff in such suit would be entered for dollars and parts of dollars, without further specifying what was payable under the judgment. Bronson v. Rodes, 7 Wall. 229, 254, 19 L. Ed. 141. Under existing conditions it seems that a judgment in the form indicated in the suit, the prosecution of which was sought to be enjoined, would not be substantially different from a judgment calling for dollars and parts of dollars in gold coin of the weight and fineness provided for by law at the time the bonds were authorized and issued.

█ The validating decrees were assailed because the proceedings in which they were rendered did not contain an allegation that

the commissioners provided for in the general drainage statute complied with the provision of that statute that "said Commissioners shall proceed to view the premises," etc. Revised General Statutes of Florida 1920, § 1110. In this connection the following provision of the validation statute was invoked: "The authority for incurring such bonded debt or issuing certificates of indebtedness, the fact that an election has been held and that such election was in favor of the issuance of bonds or certificates, if an election be required, the ordinances or resolutions authorizing their issuance, and the fact of their adoption, and all essential proceedings had or taken in connection therewith, the amount of the bonds or certificates to be issued, what interest they are to bear, and when and where principal and interest are to be paid, shall be briefly set out in said petition by proper allegations, references, or exhibits." Rev. Gen. St. 1920, § 3297.

As the Florida general drainage statute does not require an election to authorize the issue of bonds of a drainage district, authority to issue bonds of a district being conferred on its governing body, the board of supervisors, what the above set out provision required the petition for the validation of the bonds in question briefly to set out with reference to the authority for incurring such bonded debt was "the ordinances or resolutions authorizing their issuance, and the fact of their adoption, and all essential proceedings had or taken in connection" therewith. The language of that provision indicates that the concluding words of it had reference to the proceedings had or taken with reference to the ordinances or resolutions authorizing the issue of bonds and the fact of their adoption. The statute did not require the petition in the validation proceeding specifically to allege that the commissioners viewed the land comprised in the drainage district. The petition in the validating proceedings in question contained allegations showing the appointment of commissioners to assess the benefits and damages to the lands in that district, that the commissioners named were duly notified of their appointment and qualified as such by making oath as prescribed by statute, and thereafter filed their report as required by law, with assessments of the lands in said district. Those allegations, aided by the presumption that public officials perform their duty, fairly import that the assessments reported were made by the commissioners after they had viewed the lands. Stephenson v. Kirtley, 269 U. S. 163, 46 S. Ct. 50, 70 L. Ed. 213.

Objection was made to one of the validating decrees because in the proceedings in which it was rendered two notices to show cause why the bonds in question should not be validated or confirmed were given. It appears from the record that two notices by publication in newspapers were given to avoid any question as to which of two statutes mentioned governed in that regard. One of the notices complied with the requirement of the validation statute then in force. Revised General Statutes of Florida 1920, § 3297. The decree was entered after the date stated in each of the notices. Every taxpayer was afforded two opportunities to appear and file objections. No objection was filed. The required notice having been given, it is not an invalidating circumstances that another notice also was given; the latter not resulting in the rendition of a decree before it lawfully could be rendered.

In addition to the above-mentioned objections to the validating proceedings and the decrees rendered therein, those decrees were assailed on the ground that the bonds sought to be validated were not and could not be validated because the maker of them had no legal existence. So far as the just stated objection was based on the asserted unconstitutionality of the statute under which the drainage district was attempted to be organized, it is enough to say that, since this suit was begun, that statute has been adjudged to be constitutional. Duval Cattle Co. v. Hemphill (C. C. A.) 41 F.(2d) 433; McMullen v. Newmar Corporation (Fla.) 129 So. 870. The amended bill sought to bring into question the legal existence of the drainage district by allegations to the effect that the petition under which it was attempted to be organized was not filed by "a majority, either in numbers or in acreage," of the owners of land within the proposed district, as permitted by the statute (section 1098), and that there were other specified defects or irregularities in the proceedings under that petition. That petition alleged that the petitioners therein were the owners of a majority of the acreage of the lands within the proposed district. The decree establishing the district contained the recital: "And it appearing to the court that said petition is duly signed by a majority of the owners of the land and by the owners of the majority of the acreage located and embraced in said proposed district." This recital evidences a finding by the court of the facts which under the law entitled the petitioners to file the petition. Such a finding by the court of a quasi jurisdictional fact is conclusive, and

not subject to be attacked collaterally. Noble v. Union River Logging Railroad Co., 147 U. S. 165, 173, 13 S. Ct. 271, 37 L. Ed. 123; Burke v. Southern Pacific R. Co., 234 U. S. 669, 710, 34 S. Ct. 907, 58 L. Ed. 1527. In argument in behalf of appellants, the fact that the question of the lawful organization and existence of the drainage district could not have been raised in the validation proceedings was mentioned, apparently for the purpose of excusing or justifying the raising of that question in this suit. The reason for the raising of that question in the validation proceedings not being permissible is that the organization and existence of the district could not be subjected to a collateral attack. Merrell v. City of St. Petersburg, 74 Fla. 194, 76 So. 699. The same reason prevents the successful making in this suit of a collateral attack on the organization of the drainage district. The judgment of the court (one of plenary jurisdiction) establishing the drainage district, rendered in the proceeding instituted by the filing of the petition provided for by the statute, which brought into play the special jurisdiction conferred, is not open to collateral attack, and can be questioned only on appeal or by some other method of direct attack provided for by law. Fauntleroy v. Lum, 210 U. S. 230, 28 S. Ct. 641, 52 L. Ed. 1039; Hall v. Law, 102 U. S. 461, 26 L. Ed. 217. We conclude that on no ground suggested or known to us are the validating decrees in question subject to be treated as nullities or to be deprived of the effect accorded to them by law.

As to such a decree, the statute provides: "In the event no appeal is taken within the time prescribed herein, or if taken, and the decree validating said bonds or certificates is affirmed by the Supreme Court, the decree of the circuit court validating and confirming the issuance of the bonds or certificates shall be forever conclusive as to the validity of said bonds or certificates against the county, municipality, taxing district, or other political district or subdivision issuing them, and against all taxpayers and citizens thereof; and the validity of said bonds or certificates shall never be called in question in any court in this State." Revised General Statutes of Florida 1920, § 3299.

█ Under this provision such a decree, which involves no violation of a constitutional provision, is conclusive as to the validity of the bonds dealt with therein, putting in repose anything affecting the authority of their maker to issue them, or the regularity or legality of the issue, having the effect of making the question of the validity of the

bonds res adjudicata, and preventing further litigation as to that question. Weinberger v. Board of Public Instruction, 93 Fla. 470, 112 So. 253; City of Fort Myers v. State, 95 Fla. 704, 117 So. 97; Fidelity National Bank v. Swope, 274 U. S. 123, 47 S. Ct. 511, 71 L. Ed. 959.

The validity of the instruments sued on in the suit, the further prosecution of which was sought to be enjoined, having been conclusively established prior to the institution of this suit, which sought to bring into question the validity and enforceability of those instruments, the court did not err in rendering the decree appealed from.

That decree is affirmed.