**UNITED STATES ex rel. HORIGAN v. HEYWARD, Mayor, et al.**

No. 8721.

Circuit Court of Appeals, Fifth Circuit.

Aug. 16, 1938.

Giles J. Patterson, of Jacksonville, Fla., D. C. Hull, of DeLand, Fla., and P. C. Gorman, of Leesburg, Fla., for appellant.

D. H. Redfearn and R. H. Ferrell, both of Miami, Fla., for appellees.

Before FOSTER, SIBLEY, and HUTCHESON, Circuit Judges.

SIBLEY, Circuit Judge.

F. M. Horigan, by regular proceedings in the District Court of the United States obtained judgment against North Miami as a municipal corporation of the State of Florida on validated bonds and coupons in a sum of $45,333 on which payments were made, leaving $38,130 due. A proceeding for mandamus was brought against the Mayor and Councilmen and the Town

434

Treasurer, setting up that they as such officers had levied and collected taxes and had in hand money available to pay this balance, and praying that the Council be required to appropriate the money and the Treasurer to pay it over on the judgment. The respondents did not answer the alternative writ of mandamus, but moved to quash it on the grounds that it did not show relator to be entitled to the relief asked, or that they had omitted any duty, or that the relief asked would not be burdensome to the town. The court on hearing this motion to quash took judicial notice of certain decisions of the Supreme Court of Florida and of the Supreme Court of the United States, especially Mahood v. State, 101 Fla. 1254, 133 So. 90, and Ocean Beach Heights v. Brown-Crummer Investment Co., 302 U.S. 614, 58 S.Ct. 385, 82 L.Ed. 478, and held the attempt to create the municipality of North Miami was void, and dismissed the mandamus proceeding. That judgment is appealed from. We think it erroneous for several reasons.

In the first place, no such issue was presented to the court by the matter before it. The respondents had not denied there was a municipality, or that they were officers of it having money belonging to the municipality in their hands available to pay the judgment. The motion to quash, in the nature of a demurrer, showed no good reason why they should not be compelled to pay the judgment. A court, and especially a federal court, should not go outside the issues presented to inquire whether a town which is functioning as a municipal corporation of the State and as a governmental instrumentality thereof has a lawful existence. Courts may in a proper case, at the instance of private litigants who are affected, enquire into the extent and lawfulness of particular municipal powers, but an enquiry into the very existence of the municipality is in general reserved to the State itself in a direct proceeding by quo warranto. 19 R.C.L., Municipal Corporations, § 14; 43 C.J., Municipal Corporations, § 52; Merrell v. St. Petersburg, 74 Fla. 194, 76 So. 699; Town of Enterprise v. State, 29 Fla. 128, 10 So. 740; Tulare Irrigation District v. Shepard, 185 U.S. 1, 22 S.Ct. 531, 46 L.Ed. 773.

There was such a proceeding regarding this town in Mahood v. State, supra, interpreted in Leatherman v. Alta Cliff Co., 114 Fla. 305, 153 So. 845, and made the basis of decision in Ocean Beach, Heights v. Brown-Crummer Investment Co., supra, but we think all these cases were misinterpreted in the present proceeding. In the first cited case the Attorney General by quo warranto attacked the organization of this municipality, but only so far as it undertook to include the land east of Biscayne Bay, and it was sought to oust the municipal officers from the exercise of power east of the Bay only. The court said (page 92): "The pleadings all admit that there was a village known as Miami Shores and that the inhabitants of this village proceeded to the organization of a municipal corporation. The question of fact to be determined is whether or not the village had its existence and its location in whole or in part of the lands east of the middle of Biscayne Bay." The holding of law was that the lands on the two sides of the Bay were noncontiguous territory, and could not be incorporated into one town under the statute sought to be availed of; and the case was sent back to determine the question where the village of Miami Shores really was. The judgment finally reached in the lower court is not in the record before us, but we learn from Leatherman v. Alta Cliff Co., 114 Fla. 305, 153 So. 845, that the judgment was not one nullifying the municipal corporation entirely, but ousting it and the city officers from exercising authority east of Biscayne Bay; and the court said (page 846): "The ouster of jurisdiction was necessarily based on the finding and adjudication that there had never been any authority in law for the inclusion of the territory east of Biscayne Bay within the corporate limits of the town of Miami Shores. * * * These sections are legislative authority only for the creation of a hamlet or village into a municipality, and they do not authorize the citizens within a village or hamlet to create a municipality embracing such village or hamlet and including territory within such municipality which is in no manner connected with the village or hamlet sought to be incorporated into a municipality. *When the village or hamlet was incorporated by the citizens, it became a de facto corporation only to the extent authorized by the legislative acts in this regard.*" We understand by this that North Miami (the name was changed from Miami Shores by

the Legislature) was held to be not a de jure or perfect corporation because it had unlawfully included the territory east of the Bay, but that the hamlet, being on the west side of the Bay, became a de facto corporation under color of the statute, embracing the territory which was contiguous to it and properly claimed west of the Bay. In the decision of the Supreme Court of the United States the facts are in part stated thus (page 386): "In 1926, *electors residing * * * on the west side of Biscayne Bay,* incorporated a town [with an area of] 16 square miles, 14 of which were on the west side of the bay and had a population of 2,500. Two square miles were on the east side and had but 12 inhabitants." This makes it very clear that the village was on the west side and that the village incorporated itself and attempted to include the east side, nearly vacant lands. The effect of the Florida cases is thus stated: "And in those suits it was finally adjudged that the east side was not and never had been *a part of the incorporated town,* and that *the town never acquired jurisdiction de jure or de facto over the land east of the bay.* A decree of ouster *as to the east side land* was entered in December, 1931." In deciding the case it said: "Mere inspection of the statute and the defined boundaries unmistakably shows that the *west side electors* were without authority to incorporate the east side tract with that in which they resided. * * * There existed no color of authority *for the inclusion of the east side.*" (Italics ours.) We do not think the court intended to hold what the Supreme Court of Florida had not held in the quo warranto case, towit, that there was not even a de facto municipality on the west side, but it held only that neither de jure nor de facto did the municipality include the land on the east side. The municipality on the west side has functioned steadily since 1926, and has been recognized by the Florida Legislature at almost every session as a corporation existing under the laws of Florida, by changing its name, by altering the time for electing officers, by enlarging its powers, and otherwise. Chap. 13103, Sp.Acts of 1927; Chap. 14237, Sp.Acts of 1929; Chap. 15347, Sp.Acts 1931; Chap. 15822, and Chap. 15823, Sp.Acts of 1931, Ex.Sess.; Chap. 16584, Sp.Acts of 1933; Chaps. 17616, 17617, 17618, Sp.Acts of 1935; Chap. 18728, Sp.Acts of 1937. See Andes v. Eley, 158 U.S. 312, 322; Tulare Irr. Dist. v. Shepard, 185 U.S. 1, at page 15, 22 S.Ct. 531, 46 L.Ed. 773. Federal courts ought not to assume to annul it.

Furthermore, the municipality and its officers are under a triple estoppel to deny the town's existence. By virtue of a colorable organization it has issued and sold its bonds as corporate bonds to bona fide holders, has levied and collected taxes and has the money available to pay them. It cannot set up irregularities in organization as a defense against their payment. Douglas County v. Bolles, 94 U.S. 104, 24 L.Ed. 46; Tulare Irrigation District v. Shepard, 185 U.S. 1, 22 S.Ct. 531, 46 L.Ed. 773; Coler v. Dwight School Tp., 3 N.D. 249, 55 N.W. 587, 28 L.R.A. 649; Deitch v. Staub, 6 Cir., 115 F. 309. In the second place, a judicial decree of validation of the bonds before their sale was procured under the statutes of Florida on the subject, and this estops the town, its taxpayers and citizens from ever attacking their validity, Green v. Uniacke, 5 Cir., 46 F.2d 916; Thompson v. Frostproof, 89 Fla. 92, 103 So. 118, except perhaps on constitutional grounds. Weinberger v. Board, 93 Fla. 470, 112 So. 253. In the third place the judgment procured by Horigan on his bonds concludes all questions about their validity which might have been raised in that suit. A mandamus such as this is only a form of execution issued on the judgment, and the judgment is res judicata as to all defenses raised or which could have been raised. Supervisors of Rock Island County v. United States ex rel., 4 Wall. 435, 18 L.Ed. 419; Mayor of Davenport v. Lord, 9 Wall. 409, 19 L.Ed. 704; Ralls County Court v. United States, 105 U.S. 733, 26 L.Ed. 1220; Santa Fe Commissioners v. New Mexico, 215 U.S. 296, 30 S.Ct. 111, 54 L.Ed. 202; Harkness v. Hutcherson, 90 Tex. 383, 38 S.W. 1120; City of Hialeah v. United States ex rel., 5 Cir., 87 F.2d 953. If the town and its officers could ever have questioned its organization it should have been done in the suit on the bonds.

An argument is attempted that the old statute of Florida providing for the self-incorporation of villages is unconstitutional as involving too great a delegation of legislative power and could not serve as the basis even of a de facto corporation. Neither the pleadings nor the opin-

ion of the District Judge show that such a question was made and determined in the court below and is to be here reviewed. However, the town is not in this case seeking to be dissolved. It proposes to continue to function. Its officers have no injuriously affected personal interest which would give them standing to question the law under which they are acting, Franklin County v. State, 24 Fla. 55, 3 So. 471, 12 Am.St.Rep. 183; White v. Crandon, 116 Fla. 162, 156 So. 303; State v. Lancaster, 125 Fla. 464, 170 So. 126. We decline to consider the constitutional question which is put forward.

The judgment is reversed for further consistent proceedings.